Michael Ray DREW, Appellant,

v.

The STATE of Texas, Appellee.

No. 1168–86.

Court of Criminal Appeals of Texas,
En Banc.

June 21, 1989.

Michael B. Charlton (on appeal only), Charles F. Baird (on appeal only), Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. and Roe Morris and Alice Brown, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITIONS FOR DISCRETIONARY REVIEW

CLINTON, Judge.

Appellant was convicted for the offense of indecency with a child, and his punishment assessed by the jury at ten years confinement in the Texas Department of Corrections, probated, and a fine of $10,000.

In reversing appellant's conviction, the First Court of Appeals relied upon the decision of the Fifth Court of Appeals in *Murphy v. State*, 700 S.W.2d 747 (Tex.App.—Dallas 1985), to hold the trial court erred in admitting evidence of an extraneous act of indecency with a child at the punishment phase of trial simply because appellant applied to the jury for a recommendation of probation. *Drew v. State*, 719 S.W.2d 388 (Tex.App.—Houston [1st] 1986). This Court granted the State's petition for discretionary review both in *Murphy v. State*, supra, and in the instant cause to address the question whether an accused must first "open the door" before the State may present evidence of specific acts of misconduct as "relevant" to his application for probation.

After first reoffering all evidence from the guilt phase of trial, the State commenced the punishment phase in this cause with its first and only witness, D.T., a nine year old boy. Almost the entirety of D.T.'s testimony was as follows:

"Q. And how long have you known [appellant]?

A. About two years.

Q. Can you tell me whether or not anything ever happened to you in relation to [appellant]?

[DEFENSE COUNSEL]: Excuse me. I object to this line of questioning, going

into any type of extraneous offense or adjudicated offense.

THE COURT: Objection is overruled.

[DEFENSE COUNSEL]: May I have a running objection to this testimony, Your Honor?

THE COURT: You may.

That means you may answer the question.

THE WITNESS: Okay, what did you say?

BY [PROSECUTOR]:

Q. Are you nervous, [D.]?

A. A little.

Q. Just calm down, all right? Just look at me. Did anything ever happen between you and [appellant] before?

A. Yes, ma'am.

Q. Okay. And when did that happen?

[DEFENSE COUNSEL]: Excuse me just second. I'm sorry. And I also object to it, because there is not a final conviction, no conviction at all.

THE COURT: That's overruled.

BY [PROSECUTOR]:

Q. When did that happen, [D.]?

A. It was about a year ago.

Q. How old were you when that happened?

A. Eight.

Q. Can you tell me what happened?

A. One time I woke up at night, and his hand was down my pants.

Q. Okay, now, where was that?

A. At [appellant's] house.

Q. What were you doing at [appellant's] house?

A. I fell asleep.

Q. Why were you there?

A. Because my dad was playing cribbage with them.

Q. How many people were at the house that time, if you remember?

A. Three.

Q. And who were those people?

A. [Appellant] and me—[appellant] and me and my dad.

Q. And you went to sleep?

A. Yes, ma'am.

Q. Okay. What's the next thing you remember?

A. I woke up and told him to get my hand out of my pants—get his hand out of my pants.

Q. Let me back you up a minute. How were you dressed at that time?

A. I can't remember.

Q. Do you remember how [appellant] was dressed?

A. No, ma'am.

Q. Where did he put his hand?

A. On my goober.

Q. And where is your goober located? What do you do with your goober?

A. Use the restroom.

Q. Okay, Do you pee out of your goober?

A. Yes ma'am.

Q. Was he feeling your goober through your clothes or skin-to-skin?

A. Skin-to-skin.

Q. Did you tell anybody about this?

A. My mom and dad.

Q. Did you ever talk to the police about it?

A. No, ma'am."

With this evidence the State rested its case in chief at the punishment phase. Appellant's punishment evidence included testimony from a clinical psychologist that in his opinion appellant would be susceptible to treatment in a particular "program for sex offenders ... treating individuals who have trouble controlling their sexual behavior[.]" The State objected to this testimony, to no avail. Along the way the psychologist described the appellant as one who "does not possess any significant antisocial features or any problematic personality characteristics to indicate he would be a problem for the law." Asked whether appellant would present "any threat to society" if placed on probation, the psychologist expressed the opinion appellant would be "quite capable of carrying out any reasonable requirements that probation might place upon him."

In our opinion in *Murphy v. State*, —— S.W.2d —— (Tex.Cr.App., No. 102-86, delivered this day), we have held that evi-

dence of specific conduct is inadmissible at the punishment phase of trial, either to show the "character" or circumstances of the offender in general, or as relevant to "suitability" of the accused for probation, in the face of a timely objection. We further held, however, that the parties may "open the door" to admission of such evidence. In this cause our inquiry focuses upon whether that door was opened.

In tendering evidence of appellant's extraneous misconduct, the State "in effect consented to admission of specific acts of conduct to inform the jury's discretion in deciding both what punishment to assess, and whether to recommend probation." *Murphy v. State,* supra, at p. 67. By protesting that evidence at the first opportunity, however, appellant indicated an unwillingness to "play ball." Moreover, once he objected at the outset, any evidence of like kind which appellant presented to refute evidence admitted over his objection should not be considered belated agreement to admit specific conduct in aid of jury discretion. An accused cannot in fairness be expected to "forfeit" rebuttal of damaging evidence admitted over his objection in order to preserve error on appeal. Rather, we will presume appellant is "playing the game under protest." Had appellant tendered his psychologist in the first instance, the State could have admitted the testimony of D.T. at its option, and appellant would not be heard now to complain. *Id.* Under the circumstances presented here, we regard the psychologist's testimony as flowing from the failure of the trial court to sustain appellant's valid objection.\* We hold appellant did not open the door to admission of the State's specific misconduct evidence.

Accordingly, the judgment of the court of appeals is affirmed.

TEAGUE and MILLER, JJ., concur in the result only, and would follow the rationale of Judge MILLER's opinion on original submission in *Murphy v. State,* 777 S.W.2d 44 (Tex.Cr.App. opinion on rehearing delivered this day).

\* Because ordinarily it proceeds first with whatever punishment evidence it has, the State would be wise to save for rebuttal any specific misconduct it may wish to present. Obviously, if the State tenders that evidence in its case in chief and the accused objects, it will behoove the

CAMPBELL and DUNCAN, JJ., dissent only for the reason that the error is harmless beyond a reasonable doubt. See Tex. R.App.Pro., Rule 81(b)(2).

WHITE, Judge, dissenting.

I respectfully dissent to the majority's opinion because I would hold that specific instances of conduct are admissible at the punishment phase under Art. 37.07, Sec. 3(a), V.A.C.C.P., subject only to the constraints of a relevancy analysis. See *Murphy v. State,* 777 S.W.2d 44 (Tex.Cr.App., this day decided) (Opinion on Motion for Rehearing) (White, J., dissenting). I also dissent to the majority's determination that appellant's specific act of misconduct would have been admissible only in the event of appellant opening the door first.

Because the majority withdraws such probative and admissible evidence from the members of the jury, I must respectfully dissent.

BERCHELMANN, J., joins this dissent.

State to withdraw the evidence. Should the accused later open the door himself, by presenting specific conduct evidence of his own, the State may admit its misconduct evidence in rebuttal.