Robert Charles **GRUNSFELD**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 05–90–00243–CR.

Court of Appeals of Texas, Dallas.

June 4, 1991.

Rehearing Denied Aug. 20, 1991.

John D. Nation, Dallas, for appellant.

Pamela Sullivan Berdanier, Dallas, for appellee.

## OPINION

ONION, Justice.

Robert Charles Grunsfeld appeals his conviction for aggravated sexual assault. A jury assessed punishment at life imprisonment. Grunsfeld alleges insufficient evidence and also raises several points of error on the admission of evidence. We reverse the trial court's judgment.

Grunsfeld took the complainant out on a date. After dinner, the two went to Grunsfeld's mother's house where they had some drinks. After having his sexual advances rejected, Grunsfeld became violent. Grunsfeld forcibly removed the complainant's clothes and then pulled out a stun gun. Grunsfeld used the stun gun on the complainant's side, head, neck, and buttocks. Grunsfeld repeatedly raped and abused the complainant over a five-hour period.

### INSUFFICIENT EVIDENCE

Grunsfeld alleges that there is insufficient evidence to support the judgment. When an appellant challenges the sufficiency of the evidence, a reviewing court must determine whether, evaluating all the evidence in the light most favorable to the verdict, any rational trier of fact could find the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim. App.1989). The jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given their testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex.Crim.App. [Panel Op.] 1981).

Grunsfeld concedes that the evidence, when viewed under the standard cited above, is sufficient to sustain a conviction for sexual assault; he only challenges the finding as to the aggravating circumstances. Aggravated sexual assault is sexual assault with the additional element that the assaulter has placed the victim in fear that death, serious bodily injury, or kidnapping will be imminently inflicted on any person. TEX.PENAL CODE ANN. § 22.-021 (Vernon 1989). The jury is mandated to assay first if that state of fear in fact existed; the defendant's conduct is then assessed to determine if it was the producing cause of such fear and whether the subjective state of fear was reasonable in light of such conduct. *Douglas v. State*, 740 S.W.2d 890, 891 (Tex.App.—El Paso 1987, no pet.); *see Kemp v. State*, 744 S.W.2d 243, 245 (Tex.App.—Houston [14th Dist.] 1987, pet. ref'd). The jury may consider an appellant's objective conduct, his acts, words, or deeds and infer from the totality of the circumstances whether an appellant's overall conduct placed the complainant in fear of serious bodily injury. *Kemp*, 744 S.W.2d at 245. It is not necessary to show that serious bodily injury or death was threatened or inflicted. It is also not necessary to show that the appellant could have inflicted serious bodily injury. *Id.*

The complainant testified to several circumstances: she had never seen a stun gun before, the stun gun hurt "real bad"; and the stun gun made her numb. The complainant also testified that, after she hid the stun gun, Grunsfeld stated that he was going to have to find a real gun. The complainant testified that she thought Grunsfeld would use this gun on her. A jury could have found beyond a reasonable doubt that the circumstances and Grunsfeld's actions placed the complainant in fear of serious bodily injury. We overrule Grunsfeld's first point of error.

### ADMISSION OF POLICE REPORT

Next, Grunsfeld complains of the admission into evidence of a police offense report under the theory of optional completeness. TEX.R.CRIM.EVID. 107. After the the complainant had testified, the State

called John Umpledy, a Dallas police officer. On direct examination Umpledy testified that: he responded to a sexual assault report; he met the complainant at an apartment in Lewisville and took her and her roommate to Parkland Hospital; he then drove the complainant to the scene of the alleged offense, located the house in question and the house to which she fled when she escaped from Grunsfeld; and he took a report from the complainant. He did not relate that conversation. The offense report was tendered to Grunsfeld's counsel for cross-examination.

On cross-examination, Grunsfeld used the report to elicit from Umpledy some of the things that the complainant had told him. The portions elicited were highly selective. Umpledy testified that the complainant told him that Grunsfeld had been drinking heavily and had told her he loved her and wanted to marry her. At one point, when the officer-witness could not recall the address of the house to which the complainant fled, Grunsfeld had the officer review his report to refresh his memory and read the address to the jury. Grunsfeld did not introduce the report or read any other portion of the same to the jury.

Upon re-direct examination, the State offered the entire offense report into evidence under the theory of optional completeness. The trial court overruled Grunsfeld's objection and admitted the offense report into evidence.

When part of an act, declaration, conversation, writing or recorded statement is given in evidence by one party, the whole on the same subject may be inquired into by the other, as when a letter is read, all letters on the same subject between the same parties may be given. When a detailed act, declaration, conversation, writing or recorded statement is given in evidence, any other act, declaration, writing or recorded statement which is necessary to make it fully understood or to explain the same may also be given

in evidence. "Writing or recorded statements" includes depositions.

TEX.R.CRIM.EVID. 107.

Rule 107, like its forerunner,[2] is designed to guard against "the possibility of confusion, distortion or false impression that could rise from the use of an act, writing, conversation, declaration or transaction out of proper context." *Livingston v. State,* 739 S.W.2d 311, 331 (Tex.Crim.App.1987), *cert. denied,* 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988).

The State cites cases for the proposition that the entire statement is admissible under the rule of optional completeness when the defense counsel raises the issue of a police report and questions the witness as to its contents. *See, e.g., Wintters v. State,* 616 S.W.2d 197, 202 (Tex.Crim.App. [Panel Op.] 1981). We conclude that the cases are distinguishable on the facts from the instant case. The mere use of the offense report for the purposes of cross-examination did not invoke rule 107. Grunsfeld did not introduce any portion of the offense report and, other than refreshing the witness's memory as to an address, it was not read to the jury. The court erred in admitting the entire offense report into evidence.

■ We conclude, however, beyond a reasonable doubt that the error made no contribution to the conviction or punishment. TEX.R.APP.P. 81(b)(2). In making this decision, we are required to focus not on the weight of the evidence of guilt but on whether the error might possibly have prejudiced the jurors' decision-making. *Harris v. State,* 790 S.W.2d 568, 587–88 (Tex.Crim.App.1989). Thus, we focus upon the error and determine whether it contributed to the conviction or to the punishment. *Id.* at 585.

Since Grunsfeld opened the door and inquired into the conversation the officer had with the complainant, the State had every right under rule 107 to inquire into the balance of the conversation. Had the State done this, there would have been no error.

**2.** Act of May 27, 1965, 59th Leg., R.S., ch. 722, § 1, 1965 Tex.Gen.Laws 317, 470 (formerly TEX. CODE CRIM.PROC.ANN. art. 38.24 (Vernon 1981)), *repealed by* Texas Rules of Criminal Evidence, *see* Act of May 26, 1985, 69th Leg., R.S., ch. 685, § 9, 1985 Tex.Gen.Laws 2472, 2474.

An examination of the offense report reveals the balance of the conversation the officer had with the complainant and reflects other facts already in evidence from the officer without objection. Further, in jury argument Grunsfeld used the report to call to the jury's attention the inconsistencies between the complainant's trial testimony and what she told the officer as reflected in the report. He asked the jury to carefully examine the report. The error was harmless under the test prescribed. TEX.R.APP.P. 81(b)(2). We overrule Grunsfeld's second point of error.

## IN–COURT DEMONSTRATION WITH STUN GUN

In his third ground of error, Grunsfeld contends that the trial court erred in permitting a demonstration of a stun gun under circumstances different from the alleged offense. The complainant testified that during the course of the alleged offense the stun gun snapped when Grunsfeld turned it on and that a current of electricity went across the two prongs of the gun. She could see and hear the electricity. When Grunsfeld touched the gun to her skin, it hurt "real bad" and made her "numb."

Paul Wimer, a district attorney's investigator, testified that over eleven months after the alleged offense he executed a search warrant at the home of Grunsfeld's mother; that he found the stun gun in question in a closet described by the complainant; and that it was made of black plastic with metal prongs. After the stun gun was admitted into evidence, the prosecutor asked the witness to "activate" the exhibit in the presence of the jury. The witness explained that the battery might be dead, but that he had a new battery. Grunsfeld in his objection made clear that he did not oppose a demonstration with the original battery; instead, Grunsfeld directed his objection to the use of a new battery. Wimer was then permitted to testify that the stun gun was operable when it was found; that it "sparked" but that he didn't touch it. After the prosecutor pointed out that the stun gun had been in storage since its seizure, the trial court conducted a hearing in the absence of the jury. After the hearing the trial court explained to the jury that further testimony about the stun gun had been determined to be admissible, but the jurors had the serious obligation to determine its weight.

Thereafter, Wimer made clear that he had placed a new battery in the stun gun. The record reflects:

Q. Would you try that battery in front of the jury, please?

A. (Demonstrating)

This is all that the record reveals as to any in-court demonstration or experiment.

To be admissible an experiment or demonstration must be conducted under conditions that are similar to the event to be duplicated; the conditions need not be identical as dissimilarities affect the weight and not the admissibility of the evidence. The trial court has discretion to admit or exclude experiments or demonstrations, and appellate review is limited to whether the trial court abused its discretion. *Cantu v. State*, 738 S.W.2d 249, 255 (Tex.Crim. App.), *cert. denied*, 484 U.S. 872, 108 S.Ct. 203, 98 L.Ed.2d 154 (1987); *Ginther v. State*, 672 S.W.2d 475, 476–77 (Tex.Crim. App.1984).

The demonstration with a new battery was relevant to clarify the complainant's testimony, to show how the weapon worked, and to show the reasonableness of the complainant's fear of serious bodily injury or death. An experiment conducted under circumstances similar to the original transaction is helpful to an understanding of the transaction by the finder of fact. *See Dominguez v. State*, 722 S.W.2d 179, 183 (Tex.App.—Houston [14th Dist.] 1986, no pet.). We conclude that the trial court did not abuse its discretion. We overrule Grunfeld's third point of error.

## EXTRANEOUS, UNADJUDICATED OFFENSES

In his fourth point of error, Grunsfeld vigorously urges that the trial court erred in admitting into evidence at the penalty stage of the trial extraneous, unadjudi-

cated offenses and their details over timely objection.[3] The point of error calls into question the proper construction to be given Code of Criminal Procedure article 37.-07, section 3(a) after its 1989 amendment[4] with regard to the admission of extraneous, unadjudicated offenses at the penalty stage of the trial after timely objection. TEX. CODE CRIM.PROC.ANN. art. 37.07, § 3(a) (Vernon Supp.1991). We will sustain the point of error, reverse the judgment, and remand for a new hearing on punishment. *See* TEX.CODE CRIM.PROC.ANN. art. 44.29(b) (Vernon Supp.1991).

At the penalty stage of the trial, which took place in October 1989, the State presented three female witnesses. Two of the witnesses testified to rapes allegedly committed against them by Grunsfeld on May 18, 1989, and June 8, 1989, respectively. The trial court permitted the State to elicit the details of these offenses. The third witness testified about an alleged attempted rape by Grunsfeld on September 24, 1988. At the time, Grunsfeld had not been convicted for any of those assaults. After the State rested, Grunsfeld's only witness was his mother. She simply testified that Grunsfeld had not been previously convicted of a felony; this established his eligibility for probation. *See* TEX.CODE CRIM.PROC.ANN. art. 42.12, § 4a(a) (Vernon Supp.1991). She was not cross-examined.

Article 37.07 was enacted as part of the 1965 Code of Criminal Procedure. Act of May 27, 1965, 59th Leg., R.S., ch. 722, § 1, 1965 Tex.Gen. Laws 317, 462–63. It established the bifurcated trial system for certain criminal trials. It provided that at the penalty stage of the trial either party could offer evidence "as to the prior criminal record of the defendant, his general reputation, and his character." *Id.* at 462. The term "prior criminal record" was not defined, and this generated much confusion as to what evidence was properly admissible. Questions arose as to whether arrests, rap sheets, unadjudicated offenses, and remote cases fell within the meaning of the term, or whether only final convictions could be used. At the next session of the legislature the oversight was corrected. The term "prior criminal record" was defined to mean "a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged." Act of May 19, 1967, 60th Leg., R.S., ch. 659, § 22, 1967 Tex.Gen.Laws 1732, 1740. The definition has remained in the statute ever since. Extraneous, unadjudicated offenses were clearly inadmissible under the definition. Even if the conviction was final and the fact of that conviction was admissible under the statute, the State was not permitted to show the details of the offense underlying the conviction. *Stevens v. State,* 671 S.W.2d 517, 522 (Tex.Crim.App.1984); *Johnson v. State,* 650 S.W.2d 784, 792 (Tex.Crim.App. 1983); *Ramey v. State,* 575 S.W.2d 535, 537 (Tex.Crim.App. [Panel Op.] 1978).

Further, it has been held that evidence of specific unadjudicated conduct is inadmissible at the penalty stage of the trial to attack the "suitability" of the accused for probation when a timely objection is lodged. *Kingsley v. State,* 784 S.W.2d 688, 689 (Tex.Crim.App.1990); *Drew v. State,*

**3.** The State notes that appellant was granted a running objection, which it claims preserves nothing for appellate review, citing *Goodman v. State,* 701 S.W.2d 850, 863 (Tex.Crim.App.1985), *overruled in part on other grounds, Hernandez v. State,* 757 S.W.2d 744, 751–52 n. 15 (Tex.Crim. App.1988). However, *see Sattiewhite v. State,* 786 S.W.2d 271, 283–84 (Tex.Crim.App.1989). At a hearing outside the jury's presence, the State made clear what it intended to offer at the penalty stage with regard to the extraneous offenses. Appellant objected on the basis that the same was inadmissible under article 37.07, section 3(a). *See* TEX.CODE CRIM.PROC.ANN. art. 37.07, § 3(a) (Vernon Supp.1991). The trial court was of the opinion the statute's interpretation had been changed by the 1989 amendment to the statute and overruled the objection. The trial court expressly stated appellant would not have to object again in the presence of the jury to preserve any error. This was in line with rule 52(b) of the Texas Rules of Appellate Procedure. No mention of a running objection was made at the time. Later, during the penalty stage of the trial, appellant objected again and received a running objection. We conclude the objection was properly preserved for appellate review.

**4.** Act of May 28, 1989, 71st Leg., R.S., ch. 785, § 4.04, 1989 Tex.Gen.Laws 3471, 3492.

777 S.W.2d 74, 75–76 (Tex.Crim.App.1989); *Murphy v. State*, 777 S.W.2d 44, 67 (Tex. Crim.App.1989) (op. on reh'g). These holdings did not mean that an accused could not "open the door" to the admission of such evidence, but held that merely offering evidence to satisfy the eligibility requirement of probation from a jury does not "open the door." *Murphy*, 777 S.W.2d at 67–68.

In view of the arguments advanced by the parties, we will examine the statute before and after its last amendment. Prior to its 1989 amendment, article 37.07, section 3(a) provided in pertinent part:

(a) Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may, as permitted by the Rules of Evidence, be offered by the state and the defendant as to the prior criminal record of the defendant, his general reputation and his character. The term prior criminal record means a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged.

Act of May 22, 1987, 70th Leg., R.S., ch. 385, § 19, 1987 Tex.Gen.Laws 1891, 1898, *amended by* Act of May 28, 1989, 71st Leg., R.S., ch. 785, § 4.04, 1989 Tex.Gen. Laws 3471, 3492.

Article 37.07, section 3(a) now provides, in pertinent part:

(a) Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may, as permitted by the Rules of Evidence, be offered by the state and the defendant *as to any matter the court deems relevant to sentencing, including* the prior criminal record of the defendant, his general reputation and his character. The term prior criminal record means a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged.

TEX.CODE CRIM.PROC.ANN. art. 37.07, § 3(a) (Vernon Supp.1991) (emphasis added).

The only relevant change was the addition of the emphasized language. Under the former statute extraneous, unadjudicated offenses were inadmissible. Has the amendment brought about a change? At first blush, it seems that the additional language is broad and sweeping. Upon closer examination it appears that evidence of extraneous, unadjudicated offenses, even if deemed relevant to sentencing by the trial court, would have to meet two tests. First, it would have to be evidence permitted by the rules of evidence. Second, if it is part of a defendant's prior criminal record, as it has been considered in the past, it must comply with the statutory definition of that term.

As an aid in construing statutes, the Code Construction Act is applicable to the Code of Criminal Procedure. *Barbee v. State*, 432 S.W.2d 78, 82 (Tex.Crim.App. 1968), *cert. denied*, 395 U.S. 924, 89 S.Ct. 1779, 23 L.Ed.2d 241 (1969); *Ceaser v. State*, 624 S.W.2d 669, 671 (Tex.App.— Beaumont 1981, no pet.). The Code Construction Act is now found in the Government Code. TEX.GOV'T CODE ANN. §§ 311.-001–.032 (Vernon 1988). The section entitled Statute Construction Aids provides:

In construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider among other matters the

(1) object sought to be attained;

(2) circumstances under which the statute was enacted;

(3) legislative history;

(4) common law or former statutory provisions, including laws on the same or similar subjects;

(5) consequences of a particular construction;

(6) administrative construction of the statute; and

(7) title (caption), preamble, and emergency provisions.

TEX.GOV'T CODE ANN. § 311.023 (Vernon 1988).

A look at the legislative history of the 1989 amendment to article 37.07, section 3(a) reveals that it was effected by House Bill 2335, a voluminous piece of legislation which, among other things, created the

Texas Department of Criminal Justice. H.B. 2335 was introduced in the House of Representatives by Representative Alan Hightower. There was no provision in the bill amending article 37.07, section 3(a) when it passed the House of Representatives on May 4, 1989. The bill was reported adversely in the Senate's Criminal Justice Committee. Senator R. McFarland then offered Committee Substitute H.B. 2335 which included a section 4.03 amending article 37.07, section 3(a) as follows:

Regardless of the plea and whether the punishment be assessed by the judge or jury, evidence may, as permitted by the Rules of Evidence, be offered by the state or the defendant as to any matter the court deems relevant to sentencing. This subsection may not be construed as authorizing introduction of evidence seized in violation of the United States Constitution or the Texas Constitution.

References in the existing statute permitting the introduction of evidence concerning a defendant's prior criminal record, his general reputation and character, and the definition of "prior criminal record" were deleted by the proposed amendment. Obviously, the deleted language would not be needed if evidence "as to any matter the court deemed relevant to sentencing" was to be allowed. The amendment was patterned after the provisions found in Code of Criminal Procedure article 37.071(a).[5]

Apparently second thoughts prevailed, for thereafter H.B. 2335 was amended, and section 4.03 became section 4.04 of the bill amending section 3(a) of article 37.07 in the manner now found in the current statute. The references to permitting evidence as to the defendant's prior criminal record, character and reputation, and the definition of prior criminal record were restored. The last sentence of the proposed section 4.03 was omitted. H.B. 2335, almost completely rewritten, passed the Senate on May 19, 1989. The House refused to concur in the Senate amendments and a joint conference committee was appointed. The Senate adopted the joint conference committee's report on May 28, 1989, and the House did so on May 29, 1989. The bill was approved on June 15, 1989. The amendment to article 37.07, section 3(a) became effective September 1, 1989.

The bill analysis to H.B. 2335 makes no mention of the proposed amendment to article 37.07, section 3(a). The State urges consideration of the fact that representatives of the Texas District and County Attorneys' Association and the Texas Criminal Defense Attorneys' Association "indicated that they favored the amendment because the more evidence either side could get before the jury on punishment the better off that side would be." After investigation, we find that the State's conclusion has little or no support, and is not indicative of legislative intent.[6]

---

**5.** Section (a) of article 37.071 provides in pertinent part that in a capital murder case:

In the proceeding, evidence may be presented as to any matter that the court deems relevant to sentence. This subsection shall not be construed to authorize the introduction of any evidence secured in violation of the Constitution of the United States or of the State of Texas.

TEX.CODE CRIM.PROC.ANN. art. 37.071(a) (Vernon Supp.1991) (procedure in capital cases).

**6.** The State refers us to an audio tape of a hearing by the Senate's Criminal Justice Committee on Senate Bill 1169 on April 20, 1989. The bill was not a lengthy bill but stated some broad principles concerning criminal law reform. It did not contain an amendment to article 37.07, section 3(a). At the hearing the prosecutors' representative, Tom Krampitz, stated that a draft amendment to S.B. 1169 striking the limitations in article 37.07 restricting the

State to showing only prior criminal record, character and reputation of the accused was a "real good provision." John Boston, representative of the defense bar, stated he had not had a chance to study the draft amendment carefully and he could not speak for his organization on whether it would object to the "all relevant information to punishment" language in the draft amendment. He expressed only his personal opinion that the current language in article 37.071(a) "seems to make sense." Senate Bill 1169 was never amended, and was not voted out of committee. The "draft amendment" is not before us. It does not appear to be the same as section 4.04 of House Bill 2335 which did amend article 37.07, section 3(a). The scant testimony offered before the committee lends little support to what the legislature had in mind or finally enacted.

The State argues that the 1989 amendment to article 37.07, section 3(a) was aimed like a torpedo missile at the decision in *Murphy v. State*, 777 S.W.2d 44 (Tex.Crim.App.1989). While there may be some foundation for this belief, we have not found in our study of the legislative history of the amendment in question where *Murphy* was ever mentioned as the target caught in the cross-hairs.

The Code Construction Act, like an old familiar score, reminds us that words and phrases in a statute shall be read in context and construed according to the rules of grammar and common usage. TEX.GOV'T CODE ANN. § 311.011 (Vernon 1988); *see also Polk v. State*, 676 S.W.2d 408, 410 (Tex.Crim.App.1984). The dominant rule in the construction of a statute is to give effect to the intention of the legislature. The intent is generally obtained from the language of the statute and from the legislative history of the statute. *City of West Tawakoni v. Williams*, 742 S.W.2d 489, 491 (Tex.App.—Dallas 1987, writ·denied). The legislative intent is also obtained by considering the provision being construed in the context of the entire law in which it is found. *Id.; McCulloch v. Fox & Jacobs, Inc.*, 696 S.W.2d 918, 921 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). One provision will not be given a meaning out of harmony or inconsistent with other provisions, although it might be susceptible of such a construction if standing alone. *Barr v. Bernhard*, 562 S.W.2d 844, 849 (Tex.1978).

We must therefore be careful not to lift out of context the new language in section 3(a) of article 37.07 and construe it standing alone or only with certain other selected provisions of the statutes to reach a desired result. And in this connection, we must keep in mind the deletion and then the restoration of the language of the former statute during the legislative process.

In making the restoration, the legislature is presumed to have known the past construction placed on the same or similar statute by the courts. *Welch v. Welch*, 369 S.W.2d 434, 437 (Tex.Civ.App.—Dallas 1963, no writ).

Any reading of article 37.07, section 3(a) in its present form clearly shows that any evidence offered to any matter the court deems relevant to sentencing must nonetheless be that which is permitted by the Rules of Criminal Evidence. This has been a requirement of the statute since the 1985 amendment.[7]

A brief examination of the Rules of Criminal Evidence is in order. Rule 402 is an operative rule. It provides that all relevant evidence is admissible unless it contravenes the constitutions, a statute, Rules of Criminal Evidence, or other rules prescribed pursuant to statutory authority. All irrelevant evidence is inadmissible. Rule 401 defines "relevancy" and rule 403 provides the general authority to exclude relevant evidence on the basis of prejudice, confusion of issues, misleading the jury, undue delay, and cumulativeness. The general authority to exclude relevant evidence rests within the sound discretion of the trial court. Rules 404 through 412 address relevancy issues for which specialized rules have evolved for their resolution.

If it can be said that the introduction of extraneous, unadjudicated offenses at the penalty stage of the trial meets the relevancy test of rule 401 and clears the hurdles of rule 403, there is more to be considered.[8]

**Character relevant to punishment.** In the penalty phase, evidence may be offered by an accused or by the prosecution as to the prior criminal record of the accused. Other evidence of his character may be offered by an accused or by the

---

7. Act of May 26, 1985, 69th Leg., R.S., ch. 685, § 8(b), 1985 Tex.Gen.Laws 2472, 2473.

   The legislature conditioned the application of the Rules of Evidence to the promulgation of such Rules of Criminal Evidence on or before January 1, 1986. The Court of Criminal Appeals adopted the Rules of Criminal Evidence

on December 18, 1985, to become effective September 1, 1986.

8. Rules 401 and 403 are not to be passed over hurriedly at the penalty stage of the trial when the evidence sought to be introduced is extraneous, unadjudicated offenses and their details.

prosecution. Nothing herein shall limit provisions of Article 37.071, Code of Criminal Procedure.

TEX.R.CRIM.EVID. 404(c).

Rule 404(c) governs the offer of character evidence at the penalty stage of a non-capital criminal trial. It has no counterpart in our civil evidence rules or in the federal rules. It did not work any significant change in Texas law.

> By limiting admissible evidence to the accused's prior criminal record and character evidence Criminal Rule 404(c) would seem to preclude the use of most extraneous offenses which were not admitted at the trial on the merits, as well as any evidence regarding the character of the accused's victim. "Prior criminal record" is defined by article 37.07.3(a) [sic] so as to exclude extraneous offenses which were not the subject of a conviction. *"Other evidence of his character" would appear to be limited to proof by reputation and opinion witnesses as prescribed by Criminal Rule 405(a).* This would not include specific acts of misconduct by the defendant unless elicited by implication through cross-examination of the defendant's character witnesses.

33 S. GOODE, O. WELLBORN & M. SHARLOT, GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 404.7, at 135–36 (Texas Practice 1988) [hereinafter GOODE] (emphasis added) (footnotes omitted).

Thus, if a prior criminal record is to be used, it must comport with the definition in the statute. If "other evidence" is to be used to prove character at the penalty stage of a non-capital case, it is limited to proof by reputation and opinion witnesses.

The Court of Criminal Appeals instructs us that there are three basic methods of proving character: (1) reputation of the person in the community; (2) personal opinion testimony of witnesses who know the person; and (3) specific instances of conduct from which inferences may be drawn. *Hedicke v. State,* 779 S.W.2d 837, 839 (Tex. Crim.App.1989), *cert. denied,* ⸺ U.S. ⸺, 110 S.Ct. 840, 107 L.Ed.2d 836 (1990). At common law, opinion testimony was held inadmissible to prove character; this left reputation testimony as the only acceptable method of proof. *Id.* at 840. Reputation testimony is, in addition, specifically permitted by article 37.07, section 3(a). Opinion testimony is permitted to prove character in all cases. TEX.R.CRIM.EVID. 405(a). Also, article 37.07 is now held to allow opinion testimony as to character during the penalty stage of a criminal trial. *Hedicke,* 779 S.W.2d at 842. The third method of proving character—specific instances of conduct—is addressed in a separate section of the Rules of Criminal Evidence. "In cases in which character or trait of character of a person is an essential *element* of a charge, claim, or defense, proof may also be made of specific instances of his conduct." TEX.R.CRIM.EVID. 405(b) (emphasis added). It is thus clear that specific instances of conduct may be used only where character is an essential element that is required to be proved in order for the State or defendant to make its case.

Criminal and Civil Rules 405(b) are essentially identical to their federal counterpart. They address the question of when specific instances of conduct may be offered in evidence to prove character. Character may be an ultimate issue, that is, it may be an essential element of a charge, claim or defense. *This is almost exclusively a civil matter. . . .*

If character is an ultimate issue, it must be proved. In this instance, Rule 404 is not pertinent since it deals only with proof of character as circumstantial evidence to show conduct or state of mind conforming to character on a particular occasion. Permission to prove character as an ultimate issue comes from the general permission given in Rule 402 to admit all relevant evidence as defined in rule 401. Thus, Rule 405(b) was unnecessary but was presumably included to repel any argument that the common law rule of admissibility had been repealed by implication.

In cases where character was an ultimate issue, the common law and prior Texas law allowed all three modes of proving such character: reputation, opinion, and specific instances of conduct.

The Texas Rules, following the Federal Rules, codify this practice. Rule 405(a) allows proof of character by reputation or opinion whenever evidence of character is admissible. Rule 405(b) permits proof of character by specific instances of the subject's conduct when the subject's character is an ultimate issue. To be distinguished is the use, pursuant to Rule 404(b), of specific act evidence to prove some contested issue such as intent, motive or identify.

GOODE, *supra*, § 405.3 at 149–50 (emphasis added) (footnotes omitted); *see also Purtell v. State*, 761 S.W.2d 360, 369 (Tex. Crim.App.1988), *cert. denied*, 490 U.S. 1059, 109 S.Ct. 1972, 104 L.Ed.2d 441 (1989).

■■■■■ The sentencing scheme in capital murder cases provides that "evidence may be presented as to any matter the court deems relevant to sentence." TEX. CODE CRIM.PROC.ANN. art. 37.071(a) (Vernon Supp.1991). The "sentencing" procedure in capital cases requires that the State prove that "there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." TEX.CODE CRIM.PROC. ANN. art. 37.071(b)(2) (Vernon Supp.1991). Nothing in article 37.071 requires that there be a final conviction for an extraneous offense to be admissible at the punishment phase. Clearly, evidence of prior offenses falls within the range of prior criminal conduct and would be relevant to the jury's deliberations on special issue number two (article 37.071(b)(2)). *Garcia v. State*, 581 S.W.2d 168, 179 (Tex.Crim.App.1979), *vacated on other grounds*, 453 U.S. 902, 101 S.Ct. 3133, 69 L.Ed.2d 988 (1981). A rational trier of fact must find the elements of special issue number two beyond a reasonable doubt. *Keeton v. State*, 724 S.W.2d 58, 61 (Tex.Crim.App.1987). Such conduct is a factor in determining the probability that a defendant will commit criminal acts of violence that would constitute a continuing threat to society. *Id.*

■■■■■ The non-capital procedure governed by article 37.07, however, does not frame a specific issue that can be said to have character as such as an element. In non-capital cases where the jury assesses punishment, it does not determine the existence of discrete facts. Deciding what punishment to assess is a normative process, not intrinsically factbound. *Murphy*, 777 S.W.2d at 63. Significantly, in non-capital "sentencing," no burden of proof has ever been assigned to the broad issue of what punishment to assess. *Id.* at 63 n. 10. Whenever a particular issue can be identified that is of consequence at the punishment proceeding, questions of burden of proof immediately come to mind. There is no mandatory requirement that the State offer any evidence at all during the penalty stage of a non-capital case. *Id.; see also Wright v. State*, 468 S.W.2d 422, 425 (Tex.Crim.App.1971). Hence, no burden of proof is assigned.[9] Thus, criminal evidence rule 405 would not permit the use of specific acts of misconduct other than final convictions to prove character at the penalty stage of a non-capital criminal trial. Specific instances of conduct may be used only where character is an essential element that is required to be proved in order for the State to make its case; no such element is at issue in the penalty stage of a trial for a non-capital offense. The Rules of Criminal Evidence do not permit the introduction of extraneous, unadjudicated offenses and their details at the penalty stage of a non-capital case.

■■■■ We now turn to the other limiting factor—the definition of a defendant's prior criminal record. As observed earlier, when article 37.07 was first enacted, it did not contain a definition of "prior criminal record." Because of the great uncertainty as to what evidence was admissible under that term, it was defined in the 1967 amendment to the statute. Act of May 19, 1967, 60th Leg., R.S., ch. 659, § 22, 1967

---

9. Where the indictment alleges a prior conviction or convictions for the purpose of enhancement of punishment, the State would have the burden of proof beyond a reasonable doubt to prove such allegations. *See Wilson v. State*, 671 S.W.2d 524, 525 (Tex.Crim.App.1984). Of course, with the court's consent, the State may waive and abandon enhancement allegations.

Tex.Gen.Laws 1732, 1740.[10] The definition has remained unchanged. In fact, it was restored to the 1989 amendment after having been earlier eliminated. Such action clearly indicates the legislative intent to retain the limitation of evidence with regard to a defendant's prior criminal record at the penalty stage of the trial. Few can argue that extraneous, unadjudicated offenses and their details were admissible prior to the 1989 amendment. *Murphy,* 777 S.W.2d at 57.

The State calls attention to the use of the term "including" in the 1989 amendment and argues that the term is one of enlargement and not of limitation or exclusive enumeration. TEX. GOV'T CODE ANN. § 311.-005(11) (Vernon Supp.1991). We agree with the State that the 1989 amendment to article 37.07, section 3(a) expanded without enumeration *other* matters that might be introduced if the trial court deems the same relevant to sentencing and other requirements are met. We disagree, however, with the contention that the amendment authorized the introduction of extraneous, unadjudicated offenses and their details in view of the retention of the term "prior criminal record" and its limiting definition, the history of the statute and the 1989 amendment.

We hold that the testimony was inadmissible under both the Rules of Criminal Evidence and the definition limiting the meaning of a "prior criminal record." The court abused its discretion in admitting it.

It is true that Grunsfeld offered evidence simply establishing his eligibility for probation by the jury after the State had elicited evidence of three extraneous, unadjudicated offenses and their details. This did not cure any error or call for a different result. Nothing in the 1989 amendment or its history indicate that the holding in *Murphy* was intended to be superseded. In *Murphy,* the court held:

> that whether past criminal conduct by an applicant for probation may reveal a trait

or propensity to violate the law is not relevant to a material issue tendered by an application for probation in a punishment proceeding before a jury. For that matter, neither is a self-serving declaration by applicant that he will not violate the law if placed on probation.

*Murphy,* 777 S.W.2d at 67.

We are well aware of recent cases contrary to our decision today. In *McMillian,* the Houston court held admissible an extraneous, unadjudicated offense as relevant to McMillian's "fitness" for probation. *McMillian v. State,* 799 S.W.2d 311, 313–14 (Tex.App.—Houston [14th Dist.] 1990, pet. granted). Without reviewing the legislative history, the court spoke in general phrases like "significant change" and "expanded language." Then, in a conclusory statement the court found no conflict between rule 404(c) and article 37.07, section 3(a). No mention was made of "prior criminal record" contained in both the rule and the statute. The Houston court has reiterated its position in *Munoz v. State,* 803 S.W.2d 755 (Tex.App.—Houston [14th Dist.] 1991, writ refused).

In *Huggins,* the Beaumont court held the trial court did not abuse its discretion in admitting extraneous, unadjudicated offenses at the penalty stage of the trial. *Huggins v. State,* 795 S.W.2d 909, 911 (Tex.App.—Beaumont 1990, pet. ref'd). Without any analysis, the *Huggins* court held that the language in article 37.07, section (3)(a) that evidence permitted by the rules of evidence and deemed relevant to sentencing by the trial court was "additional to and separate and independent" of language found elsewhere in the statute concerning a defendant's prior criminal record, his general reputation, and character.[11] The court found the unadjudicated offenses and their details relevant under rule 401. No mention was made of rule 404(c).

The *Huggins* court then boldly held that now there "is no realistic difference or

---

10. Originally the term was found in section 2(b) of the statute. Its definition is now found in section 3(a) of article 37.07.

11. Such interpretation renders meaningless the statutory reference to "prior criminal record" and its definition.

distinction" between article 37.07, section 3(a) in non-capital cases and article 37.-071(a) with regard to the admission of extraneous, unadjudicated offenses in capital cases. No legislative history was discussed.[12] The Beaumont court has reiterated its position in *Hunter v. State*, 805 S.W.2d 918 (Tex.App.—Beaumont 1991, pet. filed).

The San Antonio court has followed *McMillian* and *Huggins. See Gallardo v. State*, 809 S.W.2d 540 (Tex.App.—San Antonio 1991, pet. filed). Here again, the legislative history was not considered nor was the statute read as a whole. The Fort Worth court has also followed *Huggins. See Hubbard v. State*, 809 S.W.2d 316 (Tex.App.—Fort Worth 1991, no pet. h.).

We do not find these cases controlling or persuasive. It is abundantly clear that whatever the intent of the legislature was in enacting the 1989 amendment to article 37.07, section 3(a), it was not to open the door to evidence in non-capital cases as wide as that in capital case sentencing. If that was the intent, then the legislature would not have retained the limiting language in the amendment. This Court cannot now eliminate those limitations. *See Rumbaugh v. State*, 589 S.W.2d 414, 418 (Tex.Crim.App.1979). We must not attempt amendment under the guise of judicial interpretation. We must not convert a statute from what it is to one of our own choosing, even if that interpretation is a popular one. Further, we cannot attribute to the legislature an intent to reach an illogical result. It would not make sense that the legislature intended that extrane-ous, unadjudicated offenses and their details be admissible, but that prior convictions must be final before being admissible and even then that details of the underlying offenses are to be excluded.

▆▆▆ Next, we address the question of whether the error requires a remand to the trial court for a new hearing on punishment. In making a harmless error determination, a reviewing court must isolate the error and all its effects, and second, ask whether a rational trier of fact might have reached a different result if the error had not occurred. The reviewing court should focus not on the weight of evidence of guilt but rather on whether the error at issue might possibly have prejudiced the jurors' decision-making process. *Harris*, 790 S.W.2d at 587–88. Rule 81(b)(2) mandates that the appellate court focus upon the error and determine, in cases like the instant one, whether the error contributed to the punishment assessed. *Id.* at 585.

▆▆▆ Focusing upon the error, we conclude that the trial court's error in allowing the jury to hear the testimony about additional rapes and their details prejudiced the jury's decision-making process. The extraneous, unadjudicated offenses could only persuade the jury that Grunsfeld stood before them as a vicious serial rapist who must be given the maximum punishment; the jury imposed life imprisonment. Therefore, this Court cannot determine beyond a reasonable doubt that the error made no contribution to the punishment assessed. TEX.R.APP.P. 81(b)(2). We sustain Grunsfeld's fourth point of error. In light of our

---

**12.** Justice Burgess, concurring in *Huggins*, disagreed with the majority's approach. He stated:

> Article 37.071 is a completely different punishment scheme from article 37.07. The capital murder jury must answer questions, they do not determine any number of years. One of those questions is whether there is a probability that the defendant would commit acts of violence that would constitute a continuing threat to society. Thus, the focus is different. Also, there is a marked difference between the actual language in the sections. Article 37.-071 is simple and straightforth, "In the proceeding, evidence may be presented as to any matter that the court deems relevant to sentence." While article 37.07 does have that

> language, there is additional language. This additional language defines "prior criminal record."
>
> Sound principles of statutory construction require that this court presume that every word in a statute is used for a purpose. *Polk v. State*, 676 S.W.2d 408, 410 (Tex.Crim.App. 1984). The majority's interpretation ignores this principle. Article 37.071 was in place before the recent amendment to article 37.07, section 3(a). The legislature could have deleted all references to "prior criminal record" but chose not to do so. Therefore, we must continue to give meaning to that phrase as defined.

*Huggins*, 795 S.W.2d at 912–13.

disposition of Grunsfeld's fourth point of error, we do not address his final point of error concerning the ex post facto application of article 37.07, section 3(a).

We reverse the trial court's judgment and remand the cause for further proceedings pursuant to article 44.29(b) of the Texas Code of Criminal Procedure.[13]

BAKER, MALONEY, ROWE, STEWART, THOMAS, WHITHAM and WHITTINGTON, JJ., join in the majority opinion.

LAGARDE, J., dissents with opinion.

ENOCH, C.J., and BURNETT, CARVER, CHAPMAN, KINKEADE and OVARD, JJ., join in the dissenting opinion.

LAGARDE, Justice, concurring and dissenting.

I agree with and concur in the majority's disposition of Grunsfeld's first three points. I respectfully dissent from the majority's holding that the trial court committed reversible error in admitting evidence of extraneous offenses during the punishment phase of Grunsfeld's trial. Accordingly, I would affirm.

The majority hold that article 37.07, section 3(a) of the Texas Code of Criminal Procedure forbids the introduction of extraneous offense evidence during the punishment phase of a trial. This section, which was amended in 1989, provides, in pertinent part, as follows:

Sec. 3. Evidence of prior criminal record in all criminal cases after a finding of guilty.

(a) Regardless of the plea and whether punishment be assessed by the judge or the jury, evidence may, as permitted by the Rules of Evidence, be offered by the state and the defendant as to *any matter the court deems relevant to sentencing, including* the prior criminal record of the defendant, his general reputation and his character. The term prior crimi-

nal record means a final conviction in a court of record, or a probated or a suspended sentence that has occurred prior to trial, or any final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged.

TEX.CODE CRIM.PROC.ANN. art. 37.07, § 3(a) (Vernon Supp.1991) (hereafter referred to as "the statute") (emphasis added to reflect amendatory language). This amendment took effect on September 1, 1989. Prior to the amendment, this section read as above, exclusive of the emphasized portion. TEX. CODE CRIM.PROC.ANN. art. 37.07, § 3(a) (Vernon 1981).

CONSTRUCTION OF ARTICLE 37.07, SECTION 3(a)

1. Presumptions.

In construing an amendment, courts must presume that the legislature intended to change the law and should construe the amendment in a way that gives effect to a change rather than one that renders the amendment useless. *Ex parte Trahan,* 591 S.W.2d 837, 842 (Tex.Crim.App.1979). Courts must also presume that the legislature intended that effect be given to the entire statute. *Ex parte Austin,* 746 S.W.2d 226, 236 (Tex.Crim.App.1988); TEX. GOV'T CODE ANN. § 311.021(2) (Vernon 1988). The legislature is presumed to have intended a just and reasonable result and to have favored the public interest over any private interest. *Lindsay v. Papageorgiou,* 751 S.W.2d 544, 547 (Tex.App.— Houston [1st Dist.] 1988, writ denied); TEX. GOV'T CODE ANN. § 311.021(3), (5) (Vernon 1988).

2. Construction Guidelines.

To assist courts in construing statutes, the Code Construction Act provides the following nonexclusive list of factors a court may consider:

---

**13.** "If the court of appeals ... awards a new trial ... only on the basis of an error ... made in the punishment stage of the trial, the cause shall stand as it would have stood in case the new trial had been granted by the court below,

except that the court shall commence the new trial as if a finding of guilt had been returned and proceed to the punishment stage of the trial...." TEX.CODE CRIM.PROC.ANN. art. 44.29(b) (Vernon Supp.1991).

(1) object sought to be attained;

(2) circumstances under which the statute was enacted;

(3) legislative history;

(4) common law or former statutory provisions, including laws on the same or similar subjects;

(5) consequences of a particular construction;

(6) administrative construction of the statute; and

(7) title (caption), preamble, and emergency provision.

TEX.GOV'T CODE ANN. § 311.023 (Vernon 1988). Unlike the majority who discuss only the legislative history, I will now review each of the pertinent guidelines separately.

a. *The object sought to be attained.*

As a starting point, this Court must remember that the legislature is presumed to have changed the law and should construe the statute to give effect to a change. *Ex parte Trahan,* 591 S.W.2d at 842. To ascertain the legislative intent in enacting this amendment, this Court must first look to the language of the statute itself. *Faulk v. State,* 608 S.W.2d 625, 631 (Tex. Crim.App.1980). The legislature's objective in amending the statute can be learned from looking at the amendatory language itself. The statute now states that evidence may be admitted as to "any matter the court deems relevant to sentencing, *including* the prior criminal record of the defendant, his general reputation and his character." TEX.CODE CRIM.PROC.ANN. art. 37.07, § 3(a) (Vernon Supp.1991) (emphasis added). The word "including" is a term of enlargement and not of limitation or exclusive enumeration. TEX.GOV'T CODE ANN. § 311.005(13) (Vernon Supp.1991). By using the term "including," the legislature sought to broaden the scope of admissible evidence at the punishment phase of a noncapital trial.

b. *The circumstances under which the statute was amended.*

In interpreting the pre-amendment version of the statute, the Court of Criminal Appeals has held that evidence of bad acts is inadmissible at the punishment phase of a trial unless the defendant first opens the door to such evidence. *Murphy v. State,* 777 S.W.2d 44, 64 (Tex.Crim.App.1989) (op. on reh'g). In a concurring opinion, Judge Duncan stated: "If the Legislature wants the jury to have access to evidence beyond that authorized by Art. 37.07, § 3(a), supra, it should pass legislation to that effect. It is not this Court's function to authorize an expansion of the statute beyond its language." *Id.* at 71 n. 1 (Duncan, J., concurring). This Court must presume that, in amending the statute, the legislature knew the circumstances and conditions affecting or relating to the amendment, including prior court decisions. *Welch v. Welch,* 369 S.W.2d 434, 437 (Tex.Civ.App.—Dallas 1963, no writ). Aware that the Court of Criminal Appeals narrowly construed the statute because of its restrictive language, the legislature, the only governing body with authority to do so, took the initiative and amended the article to broaden the scope of admissible evidence at the punishment phase of trial.

c. *The legislative history.*

I do not dispute the majority's factual discussion of the legislative history; I only disagree with the conclusions they draw therefrom. In my view, the legislative history reveals a compromise. As initially proposed, the amendment was as broad as article 37.071(a),[1] which places only a constitutional limitation on evidence admissible at the punishment stage of a capital trial. Because this proposed bill obviously met opposition, a compromise resulted.

According to the majority's construction of the statute, to be admissible at the punishment phase of a noncapital trial, evidence must both be permitted by the rules of evidence and, if it is part of a defendant's prior criminal record, it must fit within the statute's definition of prior criminal record. In its construction, the majority focus on the phrase "as permitted by the Rules of Evidence" which was carried for-

---

**1.** TEX.CODE CRIM.PROC.ANN. art. 37.071(a) (Vernon 1991) (hereafter referred to as article 37.071(a)).

ward from the previous version and on the statute's retention of the definition of prior criminal record. The majority choose to ignore the new language "as to any matter the court deems relevant to sentencing, including," which was added by the 1989 amendment. By ignoring the amendatory language, the majority neglect the very rule of statutory construction that they set forth; namely, that each part of a statute is to be considered with every other part and that all the language should be viewed together.

In contrast, my construction gives a harmonious effect to all of the statute's language. I agree with the majority that, as amended, the statute does not go as far as article 37.071(a).[2] However, unlike the majority, I believe that the statute is now more encompassing than its predecessor and permits, within the trial court's discretion, evidence of specific acts, good or bad, offered through testimony of live witnesses subject to cross-examination.[3] Specific act evidence, offered through live testimony, is not part of a defendant's prior criminal record; therefore, the fact that the statute defines "prior criminal record" should not in any way limit its introduction. The term "record" means "[a] written account of some act, transaction, or instrument, drawn up, under authority of law, by a proper officer, and designed to remain as a memorial or permanent evidence of the matters to which it relates." BLACK'S LAW DICTIONARY 1437 (4th ed. 1968). Specific act evidence, on the other hand, reveals a defendant's prior conduct, good or bad, or, put another way, is a "circumstance of a defendant." Although used interchangeably over the years, the Court of Criminal Appeals recognizes that prior criminal record and prior criminal conduct are distinct terms. *See Crane v. State,* 786 S.W.2d 338, 355 (Tex.Crim.App.1990). Evidence of one's prior criminal record is character evidence *per se. See Henson v. State,* 794 S.W.2d 385, 396 (Tex.App.—Dallas 1990, pet. ref'd). Specific act evidence, on the

other hand, is not character evidence *per se.* Consequently, its probative value is less than that of an offense for which a defendant has been finally convicted. *See Murphy,* 777 S.W.2d at 49.

Those responsible for assessing punishment need the fullest information possible concerning a defendant's life. *Murphy,* 777 S.W.2d at 63 (citing *Williams v. State,* 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949)). Because there are no discrete issues of fact to be determined at the punishment phase of a noncapital trial, the admissibility of evidence at this stage is a function of policy, not of logical relevancy. *Miller-El v. State,* 782 S.W.2d 892, 895–96 (Tex.Crim.App.1990); *Rice v. State,* 789 S.W.2d 604, 605 (Tex.App.—Dallas 1990, no pet.) (per curiam). Thus, the sentencing authority must assess punishment in light of the following goals which society seeks to achieve through sentencing: (1) deterrence of both the individual defendant and other members of society; (2) restraint; (3) rehabilitation; (4) education; and (5) retribution. W. LAFAVE & A. SCOTT, JR., CRIMINAL LAW § 1.5 (2d ed. 1986). Those responsible for sentencing cannot fully reach any of these goals and assess the proper sentence without knowing as much information about the individual defendant as possible.

The specific act evidence in this case, if believed, shows the jury that Grunsfeld has a low potential for rehabilitation; it also reveals a high potential for future dangerousness and future recidivism which bears upon his need for restraint in order to protect society. *Murphy,* 777 S.W.2d at 52 (White, J., dissenting).

d. *The common law or former statutory provisions, including laws on the same or similar subjects.*

This guideline is helpful in understanding the reason that the legislature retained the language "as permitted by the Rules of Evidence" when it amended the statute.

---

2. In this regard, I disagree with the decision in *Huggins v. State,* 795 S.W.2d 909, 911 (Tex. App.—Beaumont 1990, pet. ref'd).

3. Live witnesses would be subject, of course, to the perjury laws. *See McGary v. State,* 750 S.W.2d 782, 784–85 (Tex.Crim.App.1988).

The majority heavily emphasize this language as a "limiting factor." In the majority's view, unadjudicated, extraneous offenses are inadmissible under the statute not only because they are not part of a defendant's prior criminal record, but also because the rules of criminal evidence prohibit their admission. According to the majority, unadjudicated extraneous offense evidence constitutes other evidence of character under rule 404(c) and that character evidence may be proved only by: (1) reputation of the person in the community; (2) personal opinion testimony of witnesses who know the person; and (3) specific instances of conduct where a defendant's character is an essential element of a charge. *Hedicke v. State*, 779 S.W.2d 837, 839 (Tex.Crim.App.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 840, 107 L.Ed.2d 886 (1990); TEX.R.CRIM.EVID. 404(c), 405(a), (b).

The legislature amended the statute in 1985 to include this language contingent upon the promulgation of the rules of criminal evidence on or before January 1, 1986. The Court of Criminal Appeals approved the rules of criminal evidence on December 18, 1985, and the rules became effective on September 1, 1986. At the time of the 1985 amendment, the legislature intended for this language to restrict both the substantive evidence admissible under the statute and also the manner of proof.

When the legislature again amended this statute in 1989 it retained this language. In retaining this language, I believe that the legislature intended that "as permitted by the Rules of Evidence" now limits only the manner of proof and no longer limits the types of evidence admissible under the statute. I reach this conclusion by looking to case law construing article 37.071(a), a statute on a similar subject. As noted earlier, this Court must presume that in amending the statute, the legislature was aware of prior court decisions relating to the amendment. *Welch*, 369 S.W.2d at 437. As originally drafted, the only limitation on the trial court in admitting evidence under article 37.071(a) was that the court could not admit evidence that was obtained in violation of the United States or Texas Constitutions. Through case law, the Court of Criminal Appeals grafted on another limitation to the admission of evidence, clarifying that a trial court's discretion in the admission of evidence during the punishment phase of a capital trial extends only to the *relevance* of the evidence and does not alter the rules of evidence with regard to the *manner of proof. Crane v. State*, 786 S.W.2d 338, 354 (Tex.Crim.App. 1990); *Porter v. State*, 578 S.W.2d 742, 748 (Tex.Crim.App.1979). Thus, I do not believe that the "as permitted by the Rules of Evidence" language poses a barrier to the admission of specific act evidence.

### e. *The consequences of a particular construction.*

This guideline, perhaps best of all, exemplifies the weaknesses of the majority's rationale. It is presumed that the legislature intends to change the law when it enacts an amendment and this Court has an obligation to construe the amendment in a way that gives effect to a change rather than one that renders the amendment useless. *Ex parte Trahan*, 591 S.W.2d at 842. The majority construe the statute in a way that effectuates no change, thus rendering the legislature's efforts to enact the amendment useless. The majority state that they agree that the amendment expanded the matters that might be introduced if the trial court deems the same relevant to sentencing, but fail to give a clue as to what those matters might possibly be. In construing the statute, the majority focus on the "as permitted by the Rules of Evidence" language and the definition of prior criminal record. In contravention of the rules of construction, the majority construe the statute by emphasizing these "limiting factors" and ignoring and giving no effect to the amendatory language.

In contrast, I would reconcile the "limiting factors" with the amendatory language and give a reasonable construction to the statute as a whole. The first "limiting factor," the definition of prior criminal record, is not relevant because specific act evidence is not part of a defendant's prior criminal record. I reconcile the second

"limiting factor," the "as permitted by the Rules of Evidence" language, with the new language by construing its intended meaning in light of case law, known to the legislature at the time it enacted the amendment, which interprets a different statute concerning a similar subject. Unlike the majority, I harmoniously construe the whole of the statute, thus giving effect to the legislature's presumptive intent to change the law.

## CONSTRUCTION BY SISTER COURTS

Of the few courts that have decided cases under this amendment, most construe the amendment as I do and hold that evidence of unadjudicated, extraneous offenses is now admissible under article 37.07, section 3(a). *Hubbard v. State*, 809 S.W.2d 316 (Tex.App.—Fort Worth 1991, no pet. h.); *Gallardo v. State*, 809 S.W.2d 540 (Tex.App.—San Antonio 1991, pet. filed); *Hunter v. State*, 805 S.W.2d 918, 920–21 (Tex.App.—Beaumont 1991, pet. filed); *McMillian v. State*, 799 S.W.2d 311, 313 (Tex.App.—Houston [14th Dist.] 1990, pet. granted) (op. on reh'g); *Huggins v. State*, 795 S.W.2d 909, 911 (Tex.App.—Beaumont 1990, pet. ref'd).

## EX POST FACTO LAW

Grunsfeld raises one final argument in his fifth point. He contends that even if article 37.07, section 3(a) permits the admission of specific act evidence at the punishment phase of trial, it constitutes an ex post facto law as applied here because he committed the charged offense before the effective date of the amendment. I disagree. The United States Supreme Court defines an ex post facto law as one that: (1) punishes as a crime an act previously committed, which was innocent when done; (2) makes more burdensome the punishment for a crime; or (3) deprives one charged with a crime of any defense available according to law at the time when the act was committed. *Collins v. Youngblood*, —— U.S. ——, 110 S.Ct. 2715, 2719, 111 L.Ed.2d 30 (1990). Applying the

amended version of article 37.07, section 3(a) to Grunsfeld's trial does not constitute an ex post facto application of the law as defined by the United States Supreme Court. Further, statutes or rules relating to the admission of evidence are procedural in nature and apply to pending litigation as of the effective date of the statute or rule. *Tumlinson v. State*, 757 S.W.2d 440, 442–43 (Tex.App.—Dallas 1988, pet. ref'd). I would overrule Grunsfeld's fifth point of error.

I would affirm the trial court's judgment.

ENOCH, C.J., and KINKEADE, OVARD, BURNETT, CHAPMAN and CARVER, JJ., join in the concurring and dissenting opinion.