**Jerry Dale STANLEY, Jr., Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. C14–91–00636–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 28, 1993.

**308**

Occie H. Tate, Jr., Hempstead, for appellant.

Mark McPhail, Kathleen A. Hamilton, Michael R. Davis, Conroe, for appellee.

Before ROBERTSON, CANNON and MORSE, JJ., sitting by designation.

## OPINION

CANNON, Justice.

This is an appeal of a conviction for indecency with a child. Appellant Stanley was indicted for aggravated sexual assault of a child. A jury convicted him of the lesser offense of indecency. He complains of an illegal arrest, the admission into evidence of an involuntary confession, and the admission of an unadjudicated extraneous offense in the punishment phase of trial. We affirm in part, reverse in part.

Since Stanley does not challenge the sufficiency of the evidence, we only briefly summarize the basic facts in the light most favorable to the verdict.

In 1990, then seventeen-year-old Stanley was a member of the Harvey family, living with his mother, step-father, and two sisters. Then four-year-old Elizabeth was a member of the Merritt family, living with her mother, father, and two sisters. The Harveys and Merritts were friends and would socialize on occasion.

On January 7, 1990, the Harveys had the Merritts over for a barbecue. Stanley's sister, Susann, saw him and Elizabeth coming out of the Harveys' garage. Elizabeth's shorts and underwear were down, and she was pulling them up. Stanley was following her. Later, Susann saw Stanley and Elizabeth on the ground, close together, with their legs sticking out of a playhouse. It looked like Stanley was on top of Elizabeth.

Susann told her parents, the Harveys. Elizabeth told her mother, Mrs. Merritt. There was a discussion among the adults, and the Merritts left. The Merritts called the police.

The next day, Elizabeth made a statement to police. The police contacted the Harveys, who took Stanley from school and brought him to the police station. Police read Stanley his *Miranda* rights. Stanley did not seem to be intoxicated, under the influence of medication, or suffering from any defects. Stanley testified that the police did not beat him, whip him, or force him to make a statement. He gave an incriminating written statement to the police admitting that he touched Elizabeth's private parts with his hand and mouth.

Expert psychological testimony indicated that Stanley suffered from short-term memory impairment, motor-visual impairment, and a learning disorder suggestive of a brain injury. However, Stanley had no thinking disorder, and his intelligence was within the normal range. The expert testified that Stanley needed counseling and treatment for anxiety, depression, impulse control, and pedophilia.

The jury found Stanley guilty of indecency with a child and sentenced him to seven years. Though Stanley had no prior convictions, the jury denied probation. He appeals.

In point of error one, Stanley complains that the trial court erred in failing to allow evidence concerning the voluntariness of his confession.

At the outset, we find that Stanley has not preserved error. Stanley directs us to no place in the record where the trial court refused any evidence on voluntariness. There is no offer of proof or bill of exception to preserve for review the evidence that Stanley says the trial court refused to admit. *See* TEX.R.APP.P. 52(a) *and* TEX.R.CRIM.EVID. 103(a)(2).

Moreover, Stanley has not adequately presented his complaints for review. This is a multifarious point of error. In his briefed argument, Stanley never mentions the allegedly excluded evidence. Rather, he alludes to five other complaints: (1) denial of counsel, (2) a coerced confession, (3) unlawful warrantless arrest, (4) unlawful arrest without probable cause and an exigent circumstance, and (5) failure to obtain a magistrate's probable cause determination. We could reject this multifarious point of error without review. *Rivera v. State*, 808 S.W.2d 80, 95 (Tex.Crim.App.1991), *cert. denied*, — U.S. ——, 112 S.Ct. 279, 116 L.Ed.2d 231 (1991).

■ Nevertheless, we ignore the disconnect between the stated point of error and the briefed argument and look directly to the argument. Stanley makes the bald statement that he was denied counsel and was coerced into making a confession. However, he provides us with absolutely no argument or references to the record to support his contentions. We dismiss these complaints as being inadequately briefed. *Cook v. State*, 611 S.W.2d 83, 87 (Tex.Crim.App.1981); TEX. R.APP.P. 74(f).

■ Stanley also argues that he was illegally arrested. Though he does not adequately develop the argument, we presume that he contends that his confession was the fruit of an illegal arrest. But Stanley has not preserved an illegal arrest complaint. Stanley points us to no place in the record, and we have found none, where the issue of illegal arrest was presented to the trial court. The only reference to "arrest" in Stanley's motion to suppress was:

... [Stanley] would show the Court ... [t]hat at the time of any conversations between [Stanley] and law enforcement officers, [Stanley] was either under arrest or substantially deprived of his freedom by the attention [sic] conduct of said law enforcement officer and the surrounding circumstances.

There was a hearing on the motion to suppress, but the hearing dealt with whether Stanley's confession was voluntary and whether he intelligently and knowingly waived his *Miranda* rights. An illegal arrest issue was not raised. When Stanley's confession was introduced into evidence, Stanley did not object on illegal arrest grounds. If Stanley's contention is that his confession was the fruit of an illegal arrest, we find that he has not preserved error.

We overrule point one.

In point two, Stanley complains that the trial court erred in not making findings of fact and conclusions of law on the voluntariness of Stanley's confession.

Again, Stanley never supports his point of error with references to the record or argument. Rather, he multifariously argues that (1) Stanley's confession was not voluntary, and (2) Stanley did not intelligently and knowingly waive his *Miranda* rights. As under point one, we could dismiss this point as multifarious and for being inadequately briefed. *Rivera, supra; Cook, supra.*

■ Nonetheless, the trial court is unquestionably required to file findings of fact and conclusions of law after a hearing on the voluntariness of a confession. *Jackson v. Denno*, 378 U.S. 368, 392, 84 S.Ct. 1774, 1789, 12 L.Ed.2d 908 (1964); TEX.CODE CRIM.PROC. ANN. art. 38.22, § 6 (Vernon 1979). At the time of submission of this appeal, no such findings were included in the appellate record. We therefore ordered the trial court to file findings and supplement our record. The trial court has done so, and its findings state in pertinent part:

[T]he statement or statements given by movant, Jerry Dale Stanley, to the Sheriff of Waller County, Texas were given and made voluntarily. The Court has based its conclusion that the statements were voluntary upon the following facts which are established by a fair reading of the evi-

dence adduced in the hearing held before this court . . ., namely:

1. The movant came to the office of the Sheriff in the company of his parents.
2. The making of the statement occurred promptly upon the arrival of the movant at the office of the Sheriff.
3. That the testimony of the movant shows that he understood the significance of his statement.
4. The testimony of the movant shows that he signed the statement because it was correct, not because he was compelled to sign it by law enforcement officers.

Consequently, the Court concludes that the statement signed by the movant is a voluntary act.

We now consider the merits of Stanley's complaints.

Stanley argues that his confession was not voluntary because (1) he did not initiate the talks with police, (2) no complaint was filed, (3) he was coerced, (4) police admitted he was crying, and (5) he submitted to police control. Stanley further suggests that his arrest was illegal, but we held under point one that he waived error on the legality of his arrest. We will consider the conditions of Stanley's detention as bearing on the voluntariness of his confession; however, we will not inquire into the legality of his arrest or attempt to determine whether the taint of an illegal arrest was purged before Stanley gave his statement.

Stanley further argues that he did not knowingly and intelligently waive his *Miranda* rights because (1) he did not know the meaning of the word "waiver," (2) he had no background or experience with the criminal justice system, (3) he had mental defects, and (4) his mother was not allowed to accompany and advise him during the police interview.

■ The determination of the voluntariness of a confession is based on an examination of the totality of the circumstances. *Barney v. State*, 698 S.W.2d 114, 120 (Tex. Crim.App.1985). The trial court at a *Jackson v. Denno* hearing is the sole judge of the weight and credibility of the witnesses. *Id.* We will not disturb a trial court's finding of

fact absent an abuse of discretion. *Sinegal v. State*, 582 S.W.2d 135, 137 (Tex.Crim.App. 1979). If the trial court's findings are supported by the record, our only inquiry is whether it properly applied the law to the facts. *Burdine v. State*, 719 S.W.2d 309, 318 (Tex.Crim.App.1986), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987).

■ There was evidence that police gave Stanley his *Miranda* warnings at least twice. Police testified that Stanley indicated to them that he understood each of his rights. Stanley's written statement contained an acknowledgment that he was warned of his rights and that he "knowingly, intelligently, and voluntarily waive[d] [those] rights." The interview took place in a regular office space. Stanley was not handcuffed. He was permitted to smoke. Stanley waited with his parents for approximately 30 minutes before the interview began. Stanley's statement was completed only 45 minutes later. Stanley took about ten minutes to read his statement before he signed it. Police testified that Stanley appeared to be in control of his mental and physical faculties and that he freely and voluntarily gave the statement. They stated that no threats or promises were made. Stanley himself testified that the police did not make him sign the statement and that no officer told him to sign. Stanley also testified that he never told officers that he wanted a lawyer. He said that he asked the officers questions when he did not understand something during the interview.

■ We find that the record supports the trial court's findings. Viewing the totality of the circumstances, we agree with the trial court that Stanley's confession was voluntary. We also find that the record supports the trial court's implied finding that Stanley's knowingly and intelligently waived his *Miranda* rights. We note that the better practice is for the trial court to make an express finding on waiver of *Miranda* rights. *See Hill v. State*, 429 S.W.2d 481, 487 (Tex.Crim. App.1968) (express finding of waiver highly desirable). Here, however, the trial court did find that Stanley "understood the significance of his statement." We take this to mean that Stanley knew what he was doing

when he signed his statement that set out his *Miranda* rights and contained his assertion, "... I have and do hereby knowingly, intelligently, and voluntarily waive [my] rights."

We overrule point two.

In point three, Stanley contends that the trial court erred in requiring Stanley to testify at the punishment phase of trial to prove eligibility for probation.

Yet again, Stanley does not provide references to the record or authority supporting his point. Nor does Stanley point out in the record where he objected to the trial court's alleged errors. Rather, he argues in his brief that (1) the trial court refused to limit Stanley's testimony to the issue of his eligibility for probation, and (2) the trial court admitted extraneous offense evidence at the punishment phase. Because this point of error is inadequately briefed, we could refuse review. *Rivera, supra; Cook, supra.*

■ Interpreting his argument as best we can, we fail to see how Stanley was *required* to testify as he contends. Stanley testified at the punishment phase *at his own request.* Stanley rested his case. He later asked the trial court to reopen so that he could testify in support of his eligibility for probation. The State objected to the reopening. The trial court permitted Stanley to reopen, but refused to limit Stanley's testimony. Stanley did not object to the trial court's refusal to limit his testimony and thereby failed to preserve error.

■ Next, Stanley complains that the State questioned one of Stanley's character witnesses about her seeing Stanley fondle the breasts and private parts of his sister Susann. Stanley properly objected to the introduction of unadjudicated extraneous offense evidence.

Sec. 3. Evidence of prior criminal record in all criminal cases after a finding of guilty

(a) Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may, as permitted by the Rules of Evidence, be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including the prior criminal record of the defendant, his general reputation, and his character. *The term prior criminal record means a final conviction* in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged....

TEX.CODE CRIM.PROC.ANN. art. 37.07, § 3(a) (Vernon Supp.1993) (emphasis added).

In *Grunsfeld v. State,* 843 S.W.2d 521 (Tex. Crim.App.1992), the Court interpreted article 37.07:

[E]ven if deemed relevant to sentencing by the trial court, evidence is not admissible at punishment, *unless* (1) it is permitted by the Rules of Evidence, and (2) if the evidence sought to be admitted is evidence of an extraneous offense, it satisfies article 37.07(3)(a)'s definition of prior criminal record.

*Id.* at 523 (emphasis in original) (footnotes omitted).

Under *Grunsfeld,* unadjudicated extraneous offenses are not admissible in the punishment phase. Therefore, evidence of Stanley's molestation of his sister was inadmissible. We sustain point three.

■ Finding error, we must reverse unless we find beyond a reasonable doubt that the error made no contribution to the punishment. TEX.R.APP.P. 81(b)(2). We must consider: (1) the source and nature of the error, (2) whether and to what extent the error was emphasized by the state, (3) the probable collateral implications, (4) the probable weight a juror would place upon the error, and (5) whether declaring the error harmless would encourage the State to repeat it with impunity. *Higginbotham v. State,* 807 S.W.2d 732, 735 (Tex.Crim.App.1991).

■ Source and Nature. At the time of trial, *Grunsfeld* had not yet interpreted art. 37.07, § 3(a) to proscribe the introduction of unadjudicated extraneous offenses at the punishment phase of trial. The courts of appeals were divided on whether such evidence could be admitted when it was otherwise relevant. The prosecutor's introduction of the evidence was within a reasonable interpretation of the caselaw at the time.

Therefore, this factor weighs in favor of finding no harm.

*Emphasis by the State.* In closing argument, the prosecutor alluded to the witness' testimony regarding Stanley's fondling of his sister in an effort to persuade the jury to deny probation and keep Stanley off the streets. We find that the jury could have been influenced by the unadjudicated extraneous offense. This factor favors a finding of harm.

*Probable Collateral Implications.* Stanley had no prior convictions. He was eligible for probation. The jury sentenced him to seven years of a possible ten-year maximum with no probation. We find that the jury could have been influenced by the extraneous offense evidence. This factor favors a finding of harm.

*Probable Weight Placed on Error by Jury.* The evidence that Stanley's fondling of Elizabeth was not an isolated incident could very well have influenced the jury's assessment of punishment. This factor favors a finding of harm.

*Repetition of the Error with Impunity.* *Grunsfeld*'s interpretation of art. 37.07, § 3(a) clarified the law regarding the introduction of unadjudicated extraneous offenses, proscribing their use in the punishment phase of trial. Trial counsels and judges should now be aware of this clarification. Prosecutors are less likely to offer unadjudicated extraneous offenses, defense counsels are more likely to object to their introduction, and trial courts are more likely to sustain defense counsels' objections. We find that the risk is slight that a finding of harmless error in this case would encourage prosecutors to attempt to introduce this type of evidence. This factor weighs in favor of no harm.

Weighing all the factors, we cannot say beyond a reasonable doubt that the trial court's error in admitting the unadjudicated extraneous offense evidence did not contribute to the severity of Stanley's punishment. We find harmful error and remand for a new punishment hearing. *See* TEX.CODE CRIM. PROC.ANN. art. 44.29(b) (Vernon Supp.1993).

We note that art. 37.07, § 3(a) has been amended, effective September 1, 1993, to permit the State to introduce at the punishment phase of trial "any ... evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act." Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 5.05, 1993 Tex.Sess. Law Serv. 3589, 3762 (Vernon) (to be codified as an amendment to TEX.CODE CRIM.PROC. ANN. art. 37.07, § 3(a). However, "[a]n offense committed before the effective date of this [amendment] is covered by the law in effect when the offense was committed, and the former law is continued in effect for that purpose." *Id.* ch. 900, § 5.09 at 3763–64. Under the former law, Stanley is entitled to a new punishment hearing.

In sum, we overrule points one and two and affirm Stanley's conviction. However, we sustain point three, reverse the judgment as to punishment, and remand for a new punishment hearing.