Mary Patrice LEWIS, Appellant,

v.

The STATE of Texas, Appellee.

No. 01-92-01099-CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 30, 1993.

Discretionary Review Refused Jan. 26, 1994.

Marjorie A. Meyers, Bennett & Secrest, Houston, for appellant.

John B. Holmes, Jr., J. Harvey Hudson, Di Glaeser, Houston, for appellee.

Before OLIVER–PARROTT, C.J., and DUNN and HEDGES, JJ.

## OPINION ON MOTION
## FOR REHEARING

OLIVER–PARROTT, Chief Justice.

We withdraw our opinion of June 10, 1993, substitute in its stead the following opinion, and deny appellant's motion for rehearing.

This is an appeal by appellant, Mary Patrice Lewis, from a conviction for murder for which she was assessed punishment of 25–years confinement. We affirm in part, and reverse and remand in part for a new trial on the punishment phase.

The record indicates that 17–year–old Percy Smith was dating the 17–year–old appellant and the 14–year–old victim, Evelyn Bradford, at the same time. Upon discovery of this romantic triangle, appellant on January 27 went to a duplex apartment looking for Evelyn to warn her that they both were dating Smith. At that moment, the victim's

mother drove up, and upon meeting appellant and discovering the nature of her visit, invited her inside. Appellant informed Ms. Bradford that her daughter was, at that very moment, at Smith's home.

Ms. Bradford, accompanied by appellant, went to get Evelyn. Upon arrival at the house, Ms. Bradford went into Smith's house and brought Evelyn out with her. They all returned back to Ms. Bradford's house.

After a short time, Smith, and two of his friends, Jermaine Wilson and Artis Butler, arrived at Ms. Bradford's house and knocked on the front door. The boys were denied admission into the house by Ms. Bradford, and they returned to their car to leave. Jermaine was in the driver's seat, Smith in the front passenger seat, and Artis in the back. By this time, the complainant's stepfather, Gene Gatson, and a friend had also arrived and parked nearby, drinking beer. As the boys sat in the car, appellant and Evelyn came out of the house and approached the car.

Appellant placed herself between Smith and the open car door, with Evelyn right behind her. An argument broke out and appellant pulled a knife from inside her jacket, and pointed it at Smith. Wilson yelled out a warning to Smith, who jumped from the car, grabbed the knife from appellant, and held her hands. He gave the knife to Butler, who passed it to Evelyn. Smith and Butler released appellant and got inside the car and prepared to leave.

Appellant attempted to gain access to the car. At that time, Evelyn, who was directly behind appellant, urged her to discontinue her attempt to get to Smith. At this point, the witnesses contradict each other.

The State alleges that appellant suddenly turned to Evelyn and said, "[b]itch, you don't know me," took the knife from Evelyn, and stabbed her in the neck. Appellant claims, however, that she did not intentionally stab the victim. Rather, she grabbed the knife from the victim for the purpose of threatening Smith. Appellant stated that she took the knife from the victim, and tried to open the car, with the intention "to scare Percy with the knife." While attempting to open the door, appellant claims that the victim pulled her arm, and in response she pushed the victim back with the hand the knife was in and accidently caused the injury. There was also testimony from Smith, who claimed that appellant stabbed Evelyn as they were walking away. Moreover, Gatson testified that the boys were sitting on the hood of the car when appellant cursed at Evelyn and stabbed her. Finally, Butler testified that appellant was near the car when she snatched the knife and stabbed Evelyn.

## I. Lesser included charge

In her first point of error, appellant contends that she was entitled to an instruction on the lesser included offense of criminally negligent homicide because the evidence supports the finding that she caused the victim's death negligently, rather than intentionally.

At the close of the trial, appellant requested a charge on the lesser included offense of involuntary manslaughter and criminally negligent homicide. The trial court granted appellant's request for an instruction on involuntary manslaughter, but refused to grant appellant's request for a charge on criminally negligent homicide.

In determining whether a defendant is entitled to a charge on a lesser included offense, this Court must consider all the evidence presented. *See, e.g., Cordova v. State,* 698 S.W.2d 107, 113 (Tex.Crim.App.1985); *see also Lugo v. State,* 667 S.W.2d 144, 146 (Tex.Crim.App.1984). If evidence from any source raises the issue of a lesser included offense, an instruction on that offense must be included in the court's charge to the jury. *Saunders v. State,* 840 S.W.2d 390, 391 (Tex. Crim.App.1992); *Ojeda v. State,* 712 S.W.2d 742, 744 (Tex.Crim.App.1986).

There is a two-prong test for determining whether a jury must be charged on a lesser included offense. First, the lesser included offense must be included within the proof necessary to establish the offense charged. Second, there must be some evidence in the record that if the defendant is guilty, he is guilty of only the lesser offense. *Rousseau v. State,* 855 S.W.2d 666 (Tex. Crim.App.1993) (not yet reported); *Kinna-*

*mon v. State,* 791 S.W.2d 84, 96 (Tex.Crim. App.1990); *Creel v. State,* 754 S.W.2d 205, 210 (Tex.Crim.App.1988). Entitlement to a jury instruction on a lesser included offense must be made on a case-by-case basis according to the particular facts. *Livingston v. State,* 739 S.W.2d 311, 336 (Tex.Crim.App. 1987).

■ Criminally negligent homicide is a lesser included offense of murder. *See Thomas v. State,* 699 S.W.2d 845, 847 (Tex. Crim.App.1985); *Hunter v. State,* 647 S.W.2d 657, 659 (Tex.Crim.App.1983). Therefore, the only question presented in this case is whether the record contains evidence that appellant is "guilty only" of criminally negligent homicide.

■ The difference between criminally negligent homicide and involuntary manslaughter is the culpable mental state required to establish each offense—criminal negligence for the former and recklessness for the latter. *Thomas,* 699 S.W.2d at 849.

■ Whenever evidence from any source raises an issue that a lesser included offense may have been committed and a jury charge on the issue is properly requested, the issue must be submitted to the jury. *Moore v. State,* 574 S.W.2d 122, 124 (Tex.Crim.App. 1978). A defendant's own testimony is sufficient to raise the issue of a lesser included offense. *Hunter,* 647 S.W.2d at 658. Further, "[t]he credibility of evidence and whether it is controverted or conflicts with other evidence in the case may not be considered...." *Id.* This is true whether the evidence be strong, weak, unimpeached, or contradicted. *See Thompson v. State,* 521 S.W.2d 621, 624 (Tex.Crim.App.1974). In a jury trial where the issue is raised, it is the duty of the jury, not the trial court, "to determine whether the evidence is credible and supports the ... lesser included offense." *Moore,* 574 S.W.2d at 124; *see also Kinnamon,* 791 S.W.2d at 96.

"A person commits an offense if he causes the death of an individual by criminal negligence." TEX.PENAL CODE ANN. § 19.07(a) (Vernon 1989). Section 6.03(d) of the Texas Penal Code defines criminally negligent conduct:

A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

TEX.PENAL CODE ANN. § 6.03(d) (Vernon 1974).

■ A person commits involuntary manslaughter if he recklessly causes the death of an individual. TEX.PENAL CODE ANN. §§ 19.-05(a)(1), (Vernon 1989), 6.03(c) (Vernon 1974) (defining "recklessly"). As noted earlier, a person commits criminally negligent homicide if he causes the death of an individual by criminal negligence. The difference between the two culpable mental states required to establish the offenses of involuntary manslaughter and criminally negligent homicide, respectively, lies in whether or not the accused himself perceives the risk of harm that his conduct creates. *Moore,* 574 S.W.2d at 123. Thus, the essence of criminal negligence, and the factor that distinguishes it from involuntary manslaughter, is the failure of the accused to perceive the risk created by his conduct, which he should have perceived. *Mendieta v. State,* 706 S.W.2d 651, 652 (Tex. Crim.App.1986); *Lewis v. State,* 529 S.W.2d 550, 553 (Tex.Crim.App.1975). Before a charge on criminally negligent homicide is required, the record must contain evidence showing an unawareness of the risk. *Mendieta,* 706 S.W.2d at 653. Simply because the defendant did not intend the result does not automatically entitle the defendant to a charge of criminal negligence. *Wong v. State,* 745 S.W.2d 563, 565 (Tex.App.—Waco 1988, no pet.). Here, even though appellant said she did not "intend" to stab the victim, she testified that she knew the knife was a dangerous weapon that could cause harm, that the victim was "about an inch" directly behind her when she swung her hand back to push the victim away, and that the knife was

in her right hand. Moreover, appellant testified that her reason for pushing off with her right that had the knife in it was because "[she] was trying to get [the victim] out of the way, because she was still trying to get to Percy." This testimony can be said to raise an issue about recklessness, which was given in the charge, but not criminal negligence.

Appellant's reliance on *Hunter*, 647 S.W.2d at 657, is misplaced. In *Hunter*, the Court of Criminal Appeals held that criminal negligence was raised when the defendant's gun went off when he swung the gun into the back seat of an automobile to "quiet" the deceased. There was no evidence of any intent *to fire* the gun, therefore, requiring a charge of criminal negligence, not involuntary manslaughter. The knife, in this case however, does not need to be fired to have a serious risk of harm. We do not believe that appellant's testimony raises an issue of criminally negligent homicide.

Appellant also relies on *Moliter v. State*, No. 0526–92 (Tex.Crim.App., June 16, 1993). This opinion has been withdrawn.

We overrule appellant's first point of error.

## II. Admission of evidence at punishment stage

■ In her second point of error, appellant contends that the trial court committed reversible error by admitting into evidence during the punishment stage testimony concerning unadjudicated misconduct. Appellant argues that the unadjudicated offense was not a final conviction and, therefore, could not be used under article 37.03 at the punishment phase of the trial. TEX.CODE CRIM.P.ANN. art. 37.07, § 3(a) (Vernon Supp. 1993).

At the punishment phase of the instant case, the State offered evidence, over appellant's objection, that approximately one week before the murder, appellant went to Smith's home in an angry mood and threw a brick through the back windshield of a car belonging to Smith's mother. The court stated that the unadjudicated extraneous offenses would be admissible. Counsel for appellant objected to the introduction of the unadjudicated

acts of misconduct. Appellant's objection was overruled.

We agree with appellant that this testimony was improper, and that the trial court erred in permitting the State, over objection, to pursue this line of questioning. *Grunsfeld v. State*, 843 S.W.2d 521, 523 (Tex.Crim.App. 1992). Smith's testimony that appellant had thrown a rock at his mother's car was extraneous to the offense for which appellant was convicted.

■ The next step in our analysis is to determine whether the error was harmless beyond a reasonable doubt. TEX.R.APP.P. 81(b)(2). The scope of review is the entire record. *Harris v. State*, 790 S.W.2d 568, 586 (Tex.Crim.App.1989). The evidence is viewed in a neutral, impartial, and even-handed fashion. *Id.* To determine whether error is harmless, this Court must examine the source, nature, and degree of the error. Moreover, this Court must determine whether "beyond a reasonable doubt that the error made no contribution to the conviction or the punishment." *Grunsfeld*, 843 S.W.2d at 526.

The source of the error was testimony of Smith, a prosecution witness. The nature of the error was admitting evidence of the criminal mischief during the punishment phase of the trial.

The degree of the error was serious. The prosecutor emphasized that appellant was not an appropriate candidate for probation because she had repeatedly engaged in violent conduct in response to her rejection by a boy. Appellant had no prior criminal convictions and was eligible for probation. The jury assessed punishment at 25–years confinement. We cannot find beyond a reasonable doubt that this error did not contribute to appellant's severe punishment.

Appellant's second point of error is sustained.

## III. Due process

■ In her third, fourth, and fifth points of error, appellant contends that the trial court violated her right to due process under U.S. CONST. amend. V, TEX. CONST. art. I, § 19, and TEX.CODE CRIM.P.ANN. art. 36.14 (Vernon Supp.1993) (the trial court shall not

express any opinion as to the weight of the evidence), when it directed in the presence of the jury that she be taken into custody.

 During the guilt/innocence stage of a trial, the defendant is not ordinarily presented to a jury in jail clothes and handcuffs because such an appearance might adversely impact the presumption of innocence. *See Randle v. State,* 826 S.W.2d 943, 946 (Tex. Crim.App.1992); *Boyington v. State,* 787 S.W.2d 469, 471 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd). If this were to occur, the trial court would have to show a good and sufficient reason for such extraordinary measures, for depriving the defendant of the presumption of innocence. However, these are not the circumstances in our case.

Upon the jury's finding appellant guilty, and its being polled, the trial judge stated to the bailiff, "[a]t this time will you take Miss Lewis into custody. . . ." The following day, prior to the punishment hearing, appellant's counsel objected for the *first time* that the judge had made a comment on the evidence to the jury, and requested that the trial court instruct the jury to disregard the comment, and moved for a mistrial. The trial court denied the motion for mistrial, but instructed the jury to disregard its comments. When the jury was brought into the courtroom, the trial judge made the following announcement:

> Before we begin this morning, let me instruct you in this regard: That yesterday after break, the Court asked the deputies in the court to take the defendant in custody.
>
> Let me assure you this, this is not a comment by the Court whether—what the punishment in this case would be either way. It is a bonding matter only that has to be taken up, technical in nature.
>
> As you see, the defendant is sitting here today. Has nothing to do with how this Court feels one way or another [sic]. It's a matter of technicalities we take into account.
>
> You will not consider it as any movement from the Court with regard to any particular punishment whatsoever, and that is your decision and yours alone.

Appellant contends that the trial court should have granted her request for a mistrial.

It must be noted that the only time the jury saw appellant in the custody of the bailiff was after the jury had made its decision. There is nothing in the record to show that appellant was restrained by handcuffs or shackles. Therefore, appellant's right to the presumption of innocence terminated after she was found guilty of murder.

Appellant's third, fourth, and fifth points of error are overruled.

We reverse that portion of the trial court's judgment assessing punishment, and remand the cause for a new hearing on punishment. We affirm the remainder of the trial court's judgment.