Larry Michael HOFFMAN, Appellant,

v.

The STATE of Texas, Appellee.

No. C14–92–00702–CR.

Court of Appeals of Texas, Houston (14th Dist.).

March 3, 1994.

Discretionary Review Refused June 29, 1994.

---

Janet Seymour Morrow, Houston, for appellant.

Rikke Graber, Houston, for appellee.

Before ROBERTSON, CANNON and DRAUGHN, JJ.

**OPINION**

ROBERTSON, Justice.

A jury found appellant guilty of murder and sentenced him to thirty years confinement in the Texas Department of Criminal Justice, Institutional Division. Appellant in one point of error asserts that the trial court erroneously admitted an extraneous, unadjudicated offense in the punishment phase of the trial. We will affirm the judgment of the trial court.

Appellant's point of error directly implicates the Court of Criminal Appeals opinion *Grunsfeld v. State* whose disposition resulted in a flurry of reversals and remands for trial courts' erroneously admitting unadjudicated offenses in the punishment phase of a trial. *E.g., Robbins v. State,* 843 S.W.2d 570, 570 (Tex.Crim.App.1992); *Young v. State,* 843 S.W.2d 570, 571 (Tex.Crim.App.1992); *Slott v. State,* 843 S.W.2d 571, 571 (Tex.Crim.App. 1992); *Holifield v. State,* 843 S.W.2d 572, 572 (Tex.Crim.App.1992); *see also Grunsfeld v. State,* 843 S.W.2d 521, 526 (Tex.Crim.App. 1992) (holding admissibility of extraneous act requires final conviction). The state here attempts to circumvent a reversal on identical grounds by arguing that the extraneous offense would have been admissible at the guilt-innocence phase of a trial to rebut appellant's defensive theory. A brief recitation of the facts is necessary here to place the state's argument in context.

Appellant was engaged in the occupation of selling and buying drugs. The deceased, Billy Gibson, was a "business" associate. Gibson came to appellant's house one evening and became angry when appellant said he did not have some money he owed Gibson. Appellant knew Gibson would return later that same evening and stated to his wife that when Gibson did return, he, appellant, would kill him. Gibson did return, and appellant was true to his word, shooting at Gibson several times. An autopsy report showed Gibson died of a gunshot wound to the back of the neck. When police knocked on appellant's door to inquire about Gibson's car parked in front of appellant's house, appellant admitted he had killed Gibson. At trial

the jury heard read the second statement appellant gave police, in which he recanted his first statement and asserted that he owed Gibson $75 and that knowing Gibson would return that night, planned to kill him because he was scared of Gibson and saw no other way to get out of "dope-dealing."

The jury found appellant guilty of murder. At the punishment phase, defense counsel objected to the state's introducing an extraneous offense. The objection was overruled, and the state introduced the extraneous offense by putting on the stand a police officer who had arrested appellant for possession of a controlled substance while appellant was awaiting trial for the murder of Gibson. The police officer had pulled over appellant's car for a missing headlight, and the officer testified that he saw appellant throw out of the car window a paper bag which the officer recovered and found to contain a crack pipe and other drug paraphernalia. This offense was not prosecuted and thus did not result in a final conviction.

■ In *Grunsfeld*, the court of criminal appeals held that the legislature's retention of the "prior criminal record" language in its amendment to article 37.07, § 3(a) of the Texas Code of Criminal Procedure constituted an intent to exclude at the punishment phase extraneous unadjudicated offenses. *Grunsfeld*, 843 S.W.2d at 526–27. Of greater significance for its applicability to the instant case is the *Grunsfeld* court's declining to address the additional argument, similar to the one proferred in the instant case by the state, that the evidence was otherwise relevant and therefore admissible. *Id.* at 526 n. 13. Thus, it appears that in a post-*Grunsfeld* punishment proceeding, the strict constraints now placed on introduction of extraneous offenses override consideration of any otherwise valid reason for inclusion of the evidence. Evidence of an extraneous offense will almost always be "relevant" in some sense to the punishment phase; but the court of criminal appeals has struck the balance between probativeness and prejudiciality in favor of the latter. *See generally Murphy v. State*, 777 S.W.2d 44, 63 (Tex.Crim.App.1988) (discussing concept of relevance in punishment phase of trial). The state cites this court's decision in *McMillian v. State*, where we stated that appellant's conduct after his arrest was particularly relevant and therefore admissible at the punishment phase. In reversing that decision, the court of criminal appeals expressly disapproved this manner of circumventing *Grunsfeld* and noted that "*Grunsfeld* makes no distinction between uncharged bad acts committed prior to or after the offense for which the defendant is being prosecuted." *McMillian v. State*, 865 S.W.2d 459, 460 (Tex.Crim.App.1993).

■ The state argues that the evidence of the extraneous act was admissible to rebut appellant's testimony in the guilt-innocence phase that he shot Gibson because he was trying to get out of the drug trade and he saw no other way out. The state asserts that this testimony of the extraneous offense refuted appellant's story by showing he was still involved in the drug scene two months after the murder. The state concludes its tenuous argument by stating that because the evidence was admissible for this purpose in the guilt-innocence phase, such evidence is also admissible in the punishment phase for the same purpose. *See Hargrove v. State*, 579 S.W.2d 238, 239 (Tex.Crim.App.1979); *Longoria v. State*, 700 S.W.2d 274, 276 (Tex. App.—Corpus Christi 1985, no pet). Despite the clear expression of this proposition in these cases, we find that this assertion fails in light of the legislature's intent to segregate the guilt-innocent phase and the punishment phase and applying different considerations to these separate proceedings. *See Grunsfeld*, 843 S.W.2d at 529–30 (discussing different meaning same phrase can have in different contexts) (Clinton, J., concurring); *Murphy*, 777 S.W.2d at 62–63 (noting legislature's guidance in determining relevancy in guilt-innocence phase and lack of such guidance in punishment phase). Given *Grunsfeld*'s unequivocal rejection of the use of unadjudicated extraneous offenses in the punishment phase despite their relevance, we find the state's argument to be without merit. *See Flores v. State*, 866 S.W.2d 682, 684 (Tex.App.—Houston [1st Dist.] 1993, pet. filed). We thus hold that it was error for the trial court to admit this evidence over defense counsel's objection at trial.

Having found error in the punishment phase, we must now determine whether this error was harmless beyond a reasonable doubt in the jury's assessment of punishment. *See Chapman v. California,* 386 U.S. 18, 23–24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); Tex.R.App.P. 81(b)(2). Appellant was eligible for probation because he had never been convicted of a felony. He received a thirty-year prison sentence from the jury. Appellant claims that in view of the state's only evidence at the punishment phase being that of the extraneous offense, and the fact that appellant had never before been convicted of a crime, it is immediately apparent that appellant was harmed by the admission of the extraneous offense.

A harm analysis entails the consideration of the following five factors: (1) the source and nature of the error; (2) whether and to what extent the state emphasized the error; (3) the probable collateral implications of the error; (4) the probable weight a juror would place on the error; and (5) whether finding the error harmless would encourage the state to repeat it with impunity. *Higginbotham v. State,* 807 S.W.2d 732, 735 (Tex.Crim.App.1991). The focus of a harm analysis is on the error itself to determine whether the error tainted the jury's otherwise objective assessment of the evidence. *Harris v. State,* 790 S.W.2d 568, 588 (Tex. Crim.App.1989).

In *Harris,* the court assessed the source and nature of the error to determine whether the state intended to taint the trial in offering inadmissible evidence. *Harris,* 790 S.W.2d at 588. Appellant's trial counsel brought to the court's attention the court of criminal appeals case of *Murphy v. State* and the appellate court decision of *Grunsfeld* which had not yet been affirmed by the court of criminal appeals. The brief discussion concerning the admissibility of the evidence, which included barely any argument by the state, centered only on the prejudicial nature of the offense outweighing its probative value. At that time, the court of criminal appeals had not yet firmly decided the parameters of admissibility of such offenses at punishment. Because the question was thus still unanswered, we find the state did not set out to taint the judicial process by offering this evidence.

In considering the degree to which the state emphasized the error, we find from the record that the state clearly did not emphasize it. The state's closing argument included the state's asking for forty-five years for the offense and a reminder to the jury that although appellant was indeed eligible for probation, they had found him guilty of murder. The only hint that the state may have been referring to the extraneous offense was its mentioning the possibility of drug rehabilitation during probation. Because the state did not emphasize the error, this factor favors finding no harm.

In determining the collateral implications of the error, we note that, as the state mentions in its brief, appellant had no defense for his act. He offered only the "mitigating factor" that he killed Gibson because he saw no other way to get out of the drug business. Because the factor assessing the collateral implications of the error refers mainly to such grave results as disparaging an accused's sole defense, we can find no such implication here. *See Higginbotham,* 807 S.W.2d at 732; *Harris,* 790 S.W.2d at 585. The extraneous offense may have served only to erode appellant's credibility as to his testimony regarding this mitigating factor. Such effect does not mandate finding harmful error. *See Theus v. State,* 874 S.W.2d 121, 125 (Tex.App.—Houston [14th Dist.] 1994, n.w.h.) (noting state's articulation of fact that entire criminal trial aims to erode accused's credibility).

In assessing the effect this offense had on the jury's deliberations, we find any effect to be de minimis. *See Harris,* 790 S.W.2d at 588 (finding extraneous offense had minimal impact on jury). The state did nothing to emphasize the error and trial counsel spent some effort in pointing out to the jury the lack of hard evidence actually linking appellant to the bag thrown out of the car. Thus, this factor also weighs in favor of finding harmless error.

Finally, the fifth factor assesses whether the state will be encouraged to repeat the error with impunity. Since appellant's trial,

the court of criminal appeals affirmed *Grunsfeld* and established the strict constraints on admissibility of extraneous offenses referred to earlier in this opinion. However, the Texas legislature has since spoken on the issue and, in apparently a direct response to the *Grunsfeld* decision, amended the statute at issue to go into effect September 1, 1993. *See* TEX.CODE CRIM.PROC.ANN. art. 37.07, § 3(a) (Vernon Supp.1994). Although no case has interpreted the new language to determine whether it effectively overrules *Grunsfeld,* such outcome seems inevitable from the added language which states that permissible evidence at the sentencing phase now includes the following:

> the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, *notwithstanding Rules 404 and 405, Texas Rules of Criminal Evidence,* any other evidence of an extraneous crime or bad act that is shown to have been committed by the defendant or for which he could be held criminally responsible, *regardless of whether he had previously been charged with or convicted of the crime or act* (emphasis added). *Id.*

Because the state will now apparently be able to freely offer such information as being relevant to the sentencing process, we find this factor to be moot insofar as our harm analysis is concerned. *See Martin v. State,* 860 S.W.2d 735, 737 n. 3 (Tex.App.—Beaumont 1993, no pet.) (noting legislature's "blistering reaction" to *Grunsfeld* and possibility that statute "trumps" *Grunsfeld* ).

Having found that all the factors weigh in favor of finding no harm, we find beyond a reasonable doubt the error did not contribute to the jury's decision to sentence appellant to thirty years in prison instead of probation for the offense of murder. We affirm the judgment of the trial court.