Robert CEDILLO, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–93–00291–CR.

Court of Appeals of Texas,
San Antonio.

April 27, 1995.

Richard E. Langlois, San Antonio, for appellant.

Steven C. Hilbig, Crim. Dist. Atty., Angela Moore, Asst. Crim. Dist. Atty., San Antonio, for appellee.

Before LOPEZ, HARDBERGER and DUNCAN, JJ.

LOPEZ, Justice.

The issue in this criminal appeal is whether the erroneous admission in the punishment phase of evidence pertaining to an unadjudicated extraneous offense constituted reversible error in light of subsequently admitted evidence placing Defendant's suitability for probation in issue.

A jury convicted Defendant, Robert Cedillo, Jr. of murder on January 30, 1992. He was sentenced to forty years in prison. On appeal, we are only concerned with issues which arose during the punishment phase of trial. Prior to the punishment phase, Defendant filed a motion in limine to prohibit the State from introducing testimony concerning unadjudicated extraneous offenses. Defendant also tendered an application for probation.

Outside the presence of the jury before the punishment phase, the State indicated that it intended to introduce testimony describing a specific unadjudicated extraneous offense committed by Defendant while he was out on bond prior to trial. Specifically, the State wanted to present a witness who would testi-

fy that he observed Defendant steal a twelve-pack of beer from a convenience store. He would further state that Defendant was with an accomplice who fired a gun into the ceiling when the clerk attempted to stop them from leaving.

Defense counsel objected to the evidence on the grounds that it was inadmissible under the version of article 37.07(3)(a) of the Texas Code of Criminal Procedure in effect at that time, because it was evidence of an unadjudicated extraneous offense. The State pointed out that the article had been recently amended (in 1989), and that the court of criminal appeals had yet to address the issue. The State added that one court of appeals had determined that such evidence would be admissible under the 1989 version of article 37.07(3)(a). The trial court then ruled that the evidence was admissible under article 37.07(3)(a).[1]

The State presented their extraneous offense witness during its case in chief in the punishment phase. When the State rested, Defendant produced several witnesses who testified that Defendant was "peaceful" and "law-abiding." The jury was then instructed by the judge that the range of sentencing was five years to life, and further instructed that if they sentenced Defendant to less than ten years' imprisonment and found that he had never been convicted of a felony, they could recommend probation. In closing arguments, defense counsel asked the jury to sentence Defendant to ten years or less and recommend probation. The State argued in response that the offense committed in the convenience store, among other factors, proved Defendant could not be rehabilitated. The State asked for a life sentence. The jury sentenced Defendant to forty years' imprisonment.

---

1. Article 37.07(3)(a) as it read, in relevant part, in 1991 when the offense was committed:

Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may, as permitted by the Rules of Evidence, be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including the prior criminal record of the defendant, his general reputation and his character. The term prior criminal

record means a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged.

Acts 1989, 71st Leg., ch. 785, § 4.04 (the amended version at TEX.CODE CRIM.PROC. art. 37.07(3)(a) (Vernon Supp.1995) is applicable to offenses committed on or after the date the amendment became effective—September 1, 1993).

### a. The Evidence Was Inadmissible under Pre-amendment Article 37.07(3)(a)

■ On appeal, both parties agree that the trial court's ruling allowing admission of the evidence under the pre–1993 amendment version of article 37.07(3)(a) was error. In *Grunsfeld*, the court of criminal appeals determined that, under the 1989 version of the article, evidence of extraneous offenses was not admissible at the punishment phase of trial in a non-capital offense unless it came within a defendant's "prior criminal record" under article 37.07(3)(a). *Grunsfeld v. State*, 843 S.W.2d 521, 526 (Tex.Crim.App.1992); *Gallardo v. State*, 849 S.W.2d 825, 825 (Tex. Crim.App.1993). It was well-settled that *unadjudicated* extraneous offenses did not fall within the definition of "prior criminal record." *Grunsfeld*, 843 S.W.2d at 525 n. 9 and cases cited therein. Article 37.07(3)(a) was amended in 1993 to allow evidence of unadjudicated offenses in the punishment phase. *See* Tex.Code Crim.Proc. art. 37.07(3)(a) (Vernon Supp.1995); *Hoffman v. State*, 874 S.W.2d 138, 142 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd). However, this amendment came too late to affect the instant case.

### b. The Evidence Was Inadmissible as Relevant to Suitability for Probation

■ There was one exception to the old article 37.07(3)(a) exclusion of unadjudicated extraneous offenses at the punishment phase. In *Murphy*, the court of criminal appeals held that, when a defendant made an application for probation to the jury, unadjudicated offense evidence would be admissible to *rebut* evidence offered by the defendant on his suitability for probation. *Murphy v. State*, 777 S.W.2d 44, 62–68 (Tex.Crim.App.1988). Evidence on suitability, as distinguished from that on eligibility for probation, includes evidence relating to a defendant's ability to obey the law and abide by any conditions of probation. *Id.* Generally, neither party could offer evidence on suitability over the objection of the opposing party, because such evidence was held by the Court to not be relevant to a material issue tendered by an application for probation in a jury trial. *Id.* at 62–63, 67. Unadjudicated extraneous offenses offered by the State to show propensity to violate the law were thus inadmissible because they were irrelevant. *Id.* at 67. They became admissible, however, after the door was opened to the issue of suitability for probation. The only way a party could open the door to suitability was to either offer the evidence without objection from the opposing party, or decline to object to evidence offered by the opposing party, which implied consent to the admission of the evidence. *Id.* at 67. In other words, the door could only be opened with the consent of both parties.

In the instant case, the State presented its witnesses at the punishment phase first, including the one who testified on the unadjudicated extraneous offense. Defendant then introduced evidence which related to his suitability for probation. Defendant's actions in rebutting the State's evidence did not open the door to the issue of suitability. *McMillian v. State*, 865 S.W.2d 459 (Tex.Crim.App. 1993); *Drew v. State*, 777 S.W.2d 74 (Tex. Crim.App.1989). "An accused cannot in fairness be expected to 'forfeit' damaging evidence admitted over his objection in order to preserve error on appeal." *Drew*, 777 S.W.2d at 76. The unadjudicated extraneous offense could not have been admissible to rebut Defendant's allegations of suitability, and it was not admissible to open the door on suitability over Defendant's objection. We therefore hold that the trial court clearly erred in allowing the State, over Defendant's proper objection, to present evidence of an unadjudicated extraneous offense as part of their case-in-chief at the punishment phase of trial. We now turn to an analysis of harm. *See* Tex.R.App.P. 81(b).

### c. The Error Was Not "Cured" by Subsequently Admitted Evidence

■ Whether or not there was error is not the real issue in this case, because the State agrees that error occurred. The real issue presented by the State's sole attempt to avoid reversal on appeal is whether the error in admitting the unadjudicated extraneous offense was "cured" by Defendant's "subsequently admitted evidence" on his suitability for probation. The State cites *Siqueiros v. State*, 685 S.W.2d 68 (Tex.Crim.App.1985)

and *Ecby v. State*, 840 S.W.2d 761 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd) for the proposition that subsequently admitted evidence can render a trial court's error in admitting extraneous offense evidence harmless.

■ In *Siqueiros*, the court of criminal appeals held that error in admission of an extraneous offense in the State's case-in-chief at the guilt-innocence phase of trial can be rendered harmless by subsequently admitted evidence through which the defendant raises the issue of intent, the defense of duress, or the issue of identity. 685 S.W.2d at 71. The rule enunciated in *Siqueiros* has never been extended to the punishment phase of trial. We distinguish *Siqueiros* from the instant case because the admission of extraneous offense evidence in the punishment phase is governed by Article 37.07(3)(a) as well as Texas Rules of Criminal Evidence 402 and 404(b) and (c). Tex.R.Crim.Evid. arts. 402, 404 (relevancy and specific acts evidence rules). Different rules and different policies govern the determinations of relevancy and the admissions of specific act evidence in the punishment phase. *See Murphy*, 777 S.W.2d at 62–68. We decline to infer from *Siqueiros* that the harm suffered through the erroneous admission of unadjudicated extraneous offenses is curable by subsequently admitted evidence to the same extent in the punishment phase as it is in the guilt-innocence phase of trial.

Further, to apply *Siqueiros* to unadjudicated extraneous offense evidence in the punishment phase would render any protection the court of criminal appeals provided defendants in *Drew* and *McMillian* completely ineffective. The court of criminal appeals emphatically stated, and restated as recently as 1993, that subsequently admitted evidence on suitability will not retroactively open the door and render previously admitted evidence on suitability admissible. *McMillian*, 865 S.W.2d at 460; *Drew*, 777 S.W.2d at 76. We see no substantive difference between the holdings in *McMillian* and *Drew* and our holding here—subsequently admitted evidence on suitability for probation does not render the original error in admission of an unadjudicated extraneous offense in the punishment phase harmless as a matter of law.

### d. The Error Was Harmful

■ Since the trial court's error was not cured, we must reverse unless we determine that the error was harmless beyond a reasonable doubt. Tex.R.App.P. 81(b)(2); *Mayes v. State*, 816 S.W.2d 79, 88 (Tex.Crim.App. 1991); *Harris v. State*, 790 S.W.2d 568 (Tex. Crim.App.1989). In *Harris*, the court of criminal appeals delineated certain considerations for a harmless error analysis: (1) the source and nature of the error; (2) whether and to what extent the State emphasized the error; (3) the error's probable collateral implications; (4) the probable weight a juror would put on the error; (5) and whether finding the error harmless would encourage the State to repeat it with impunity. *Harris*, 790 S.W.2d at 587–88, *Higginbotham v. State*, 807 S.W.2d 732, 735 (Tex.Crim.App. 1991); *Hoffman v. State*, 874 S.W.2d 138, 141 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd). We note that at the time this trial was conducted, the court of criminal appeals had yet to determine whether the 1989 version of article 37.07(3)(a) excluded unadjudicated extraneous offenses from the punishment phase. We do not believe the State intended to taint the trial process in offering this evidence. We further realize that this error will not be repeated in future trials on offenses committed after September 1993, as the new version of the statute allows such evidence to be introduced. However, we still cannot say that the error was harmless beyond a reasonable doubt.

As previously stated, Defendant was convicted of murder. He was seventeen at the time the offense was committed. He lived with his family. Several witnesses came and testified on his behalf, including his mother, father and aunt. They all testified that Defendant was responsible, peaceful and able to obey the law and meet the terms of his probation. In considering the degree to which the State emphasized the unadjudicated extraneous offense, we note that the State cross-examined each witness about the offense.

In closing argument, defense counsel spent a great deal of time arguing that Defendant

was a good candidate for probation. We note that the State, in response, expended much effort in attempting to erode any sympathy for Defendant that his witnesses might have evoked on his behalf. The State emphasized the error in admitting the unadjudicated convenience store offense by stressing that Defendant's family could not control him at the time he committed the murder, nor could they control him at the time he allegedly robbed the convenience store. The State argued that probation would be an absurd sentence. The State further stated that the jury was not punishing Defendant for the convenience store incident, but rather that the incident was evidence that he could not be rehabilitated and that he had no remorse. The State then asked for a life sentence.

The jury was given a punishment range from a sentence of life to not less than five years. They assessed punishment at forty years imprisonment. Moreover, they did not recommend probation. Given the emphasis placed by the State on the erroneously admitted unadjudicated offense evidence, this Court cannot conclude beyond a reasonable doubt that the admission of the unadjudicated extraneous offense did not taint the jury's otherwise objective assessment of the evidence. *See Harris,* 790 S.W.2d at 588. We find that the error was harmful. Accordingly, we reverse the judgment and remand the case to the trial court for a new punishment phase consistent with Texas Code of Criminal Procedure Article 44.29(b).