**Roy Lee HUBBARD, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–89–303–CR.**

Court of Appeals of Texas, Fort Worth.

Aug. 3, 1995.

Robert Ford, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., Betty Marshall, Asst. Chief of Appellate Section, and David Montague, Asst., Fort Worth, for appellee.

Before CAYCE, C.J., and DAY and BRIGHAM, JJ.

## OPINION ON REMAND

CAYCE, Chief Justice.

Appellant Roy Lee Hubbard was found guilty by a jury of possession of cocaine with intent to deliver. At punishment, the jury found the enhancement paragraphs true, made an affirmative finding of a deadly weapon, and assessed a life sentence. The conviction was affirmed by this court, but reversed and remanded by the court of criminal appeals for reconsideration in light of *Grunsfeld v. State*, 843 S.W.2d 521 (Tex. Crim.App.1992). *See Hubbard v. State*, 809 S.W.2d 316 (Tex.App.—Fort Worth 1991), *rev'd*, 892 S.W.2d 909, 911 (Tex.Crim.App. 1995). In *Grunsfeld*, the court of criminal appeals held that evidence of extraneous, unadjudicated offenses was not admissible in

the punishment phase of a noncapital trial. *Grunsfeld*, 843 S.W.2d at 526.

In this appeal, Hubbard contends in a single point of error that the trial court erred in allowing the State to introduce evidence of an attempted murder committed by Hubbard some three months after the instant offense. At the time of trial, Hubbard was under indictment for the attempted murder offense, but had not yet been tried. The State concedes the error, yet contends it is harmless beyond a reasonable doubt. We agree with the State and overrule Hubbard's point of error.

During the punishment phase of Hubbard's trial, the evidence showed that he had previously been convicted of two burglaries, assault with intent to commit murder, unlawful possession of a firearm by a convicted felon, theft, two 1971 robberies by a firearm in which the death penalty was waived,[1] and murder. In addition, over Hubbard's timely objections, the trial court allowed Anthony Hall to testify that on October 21, 1988, three months after the instant offense, he parked his recently purchased used car at a carwash to use a pay phone. While he was on the phone, Hubbard came up and started asking people whose car it was. Hubbard pulled out some keys, opened the door to Anthony's car, and got in. Anthony rushed over. The two argued, Hubbard got out of the car, pushed Anthony, pulled out a gun, and shot Anthony in the back. When a friend of Anthony's started yelling, Hubbard shot at the friend also.

■ Hubbard contends the erroneous admission of Hall's testimony at the punishment phase of the trial harmed him. We disagree.

■ In determining if error by the trial court was harmful, we must review the integrity of the process leading to the conviction, not the outcome of the case. *Harris v. State*, 790 S.W.2d 568, 587 (Tex.Crim.App.1989). We must isolate the error and all of its effects, and then ask whether a rational trier

of fact might have reached a different result. *Id.* at 588. In other words, we must find beyond a reasonable doubt that the erroneous admission of the unadjudicated, extraneous offense did not contribute to an increase in Hubbard's punishment. *Id.* at 584. In making this determination, we are required to examine six factors:

(1) the source of the error;

(2) the nature of the error;

(3) the extent to which the erroneous evidence was emphasized by the State;

(4) its probable collateral implications;

(5) the weight a juror would probably give to the erroneous evidence; and

(6) whether declaring the error harmless would encourage the State to repeat the error with impunity.

*Id.* at 587.

Applying these six factors to the facts of this case, we find that the erroneous admission of the unadjudicated offense was harmless beyond a reasonable doubt.

In analyzing the alleged harm in this case under the first two factors, we must determine whether the State intended to taint the trial by offering the inadmissible testimony. We find it did not.

There is no evidence that the State intended to taint the proceedings by introducing Hall's testimony regarding the unadjudicated offense. To the contrary, it appears the State believed at the time of trial that it was following prevailing case law. Therefore, we presume the State did not intend to taint the proceedings by introducing improper evidence. *See, e.g., Lester v. State*, 889 S.W.2d 592, 594 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd); *Monroe v. State*, 864 S.W.2d 140, 145 (Tex.App.—Texarkana 1993, pet. ref'd).

We further find that the State did not emphasize the unadjudicated offense. At the time of the punishment phase of the trial, the jury had already heard the facts surrounding

---

1. The trial date for these convictions was September 14, 1971. Texas law at that time provided that the punishment for robbery by firearm or other deadly weapon "shall be death or by confinement in the penitentiary for any term not less than five years." Acts 1895, 24th Leg., R.S., ch. 62, § 1, 1895 Tex.Gen.Laws 89, *repealed by* Act of May 23, 1973, 63rd Leg., R.S., ch. 399, § 29.03, 1973 Tex.Gen.Laws 889, 926.

the instant offense in which Hubbard sold cocaine across from an elementary school, ran from the police, and reached for his fully loaded gun as the officers closed in on him. Other evidence offered during the punishment phase showed that Hubbard had a minimum of eight prior final convictions. During its closing argument, the State discussed these convictions without even mentioning the unadjudicated attempted murder. We conclude that when the unadjudicated offense is considered in the context of all the punishment evidence and State arguments, the State plainly did not emphasize the unadjudicated offense. *See also Lester*, 889 S.W.2d at 594 (State focused on defendant's other crimes and did not mention unadjudicated offense in argument); *McMillian v. State*, 874 S.W.2d 189, 191 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd) (State's focus on evidence supporting primary offense and on discrediting defendant's witness showed no emphasis on unadjudicated offense although it was mentioned twice during argument); *Hoffman v. State*, 874 S.W.2d 138, 141 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd) (one "hint" during argument insufficient to show State emphasized error).

Our next inquiry is whether the error resulted in any collateral implications which may have impaired Hubbard's defense. In this case, the error occurred during the punishment phase of the trial and Hubbard offered no defense or evidence. Consequently, there logically could not have been any collateral implications in admitting Hall's testimony on the unadjudicated offense. *See Lester*, 889 S.W.2d at 594; *Hoffman*, 874 S.W.2d at 141.

Another factor we must consider in assessing harm under the six factors listed above is the weight the jurors may have given the unadjudicated offense. In making this determination, we consider such factors as the egregiousness of the primary offense, the strength of the State's case, the existence of other punishment evidence, and whether the unadjudicated offense was mentioned during argument. *See Lester*, 889 S.W.2d at 594, *Hoffman*, 874 S.W.2d at 141; *White v. State*, 866 S.W.2d 78, 84 (Tex.App.—Beaumont 1993, no pet.).

From the point of view of a juror in this case, the primary offense was certainly egregious. Hubbard was armed and selling drugs across from an elementary school. The evidence supporting the State's case against Hubbard was compelling; Hubbard presented no evidence at either phase at trial; there was abundant evidence of prior convictions for violent offenses; and, the unadjudicated offense was not mentioned during argument. Under these facts, we find that the effect, if any, of the unadjudicated offense on the jurors' deliberations was minimal.

Finally, we conclude that a finding that the erroneous admission of the unadjudicated offense is harmless will not result in repeated prosecutorial error. The state legislature has since passed legislation which abrogates the holding in *Grunsfeld* prohibiting the introduction of unadjudicated, extraneous offenses at the punishment stage of trial. *See* Tex.Code Crim.Proc.Ann. art. 37.07 (Vernon 1981 & Supp.1995); *Lester*, 889 S.W.2d at 594. As a result, there clearly is no danger of further abuse by the State. *See Hoffman*, 874 S.W.2d at 142.

Based on the foregoing conclusions, we hold the improper admission of the attempted murder at the punishment phase of Hubbard's trial was harmless beyond a reasonable doubt.[2]

---

2. The State aptly points out that the lack of harm is particularly evident when the facts of this case are compared to those cases in which harm has been found. In this case, one unadjudicated offense was introduced, but not argued, at the punishment phase of the trial of a seven-time convicted felon with a twenty-year history of violence. In the cases in which harm has been found, the unadjudicated offenses have outnumbered any prior convictions and have been emphasized by the State in argument. For example, see *Voisine v. State*, 889 S.W.2d 371, 372

(Tex.App.—Houston [14th Dist.] 1994, no pet.) (State argued extraneous offense against probation eligible defendant); *Stone v. State*, 870 S.W.2d 692, 694 (Tex.App.—Beaumont 1994, pet. ref'd) (State introduced numerous unadjudicated burglaries, drug offenses, and assaultive offenses against defendant with only one prior conviction); *Stanley v. State*, 866 S.W.2d 306, 312 (Tex.App.—Houston [14th Dist.] 1993, no pet.) (prosecutor used defendant's fondling of his sister to persuade jury to deny probation); *Lewis v. State*, 866 S.W.2d 272, 276 (Tex.App.—Hous-

Hubbard's point of error is overruled and the trial court's judgment is affirmed.

ton [1st Dist.] 1993, pet. ref'd) (prosecutor emphasized that unadjudicated acts of violence meant defendant was not an appropriate candidate for probation); and *Kessler v. State*, 850

S.W.2d 217, 223 (Tex.App.—Fort Worth 1993, no pet.) (State concedes harm due to number of unadjudicated offenses admitted).